695 So.2d 1367 (1997)
STATE of Louisiana
v.
Edward KENNERSON.
No. CR96-1518.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1997.
*1369 Jerold Edward Knoll, Michael Francis Kelly, Marksville, for State.
Dmitrc I. Burnes, Alexandria, for Edward Kennerson.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
WOODARD, Judge.
Defendant appeals his conviction and sentence stemming from two instances of simple burglary. We affirm the convictions, vacate the sentences, and remand for resentencing.

FACTS
On the night of July 15, 1995, the defendant, Charles Edward Kennerson, along with three other men, drove to the home of Wayne Bordelon in Avoyelles Parish. Bordelon's truck was unlocked and parked in his driveway. Bordelon's son's truck (registered in Bordelon's name) was also parked there but was locked. Kennerson and his accomplices entered both trucks, removed various items, and left. Bordelon did not become aware of the theft until the following morning.
The burglars then went to the home of Dr. James Guillory, also in Avoyelles Parish. While two of the defendant's accomplices stayed in the yard and ate pears from Guillory's trees, the defendant and his other accomplice, a juvenile, entered a shed attached to the victim's carport and removed boxes of frozen meat. The burglars loaded them into the defendant's car with the items taken from Bordelon's trucks, and left. Guillory did not realize the meat had been taken until the following morning.
On October 3, 1995, the defendant was charged by bill of information with two counts of simple burglary, violations of La. R.S. 14:62. At the close of trial on May 17, 1996, the six-member jury found the defendant guilty on both counts. Pursuant to La.R.S. 15:529.1, he was subsequently charged as an habitual offender on June 4, 1996, and the court advised him of his constitutional rights.
On June 25, 1996, the defendant's current counsel was enrolled as counsel of record. After a hearing held July 9, 1996, the district court determined that the defendant was a third habitual offender and denied the defendant's Motion for Post-Verdict Judgment of Acquittal at a hearing on July 23,1996.
The district court sentenced the defendant to twenty years on each count, sentences to run consecutively, after reviewing the Presentence Investigation Report (PSI) and hearing further arguments. The defendant's Motion to Reconsider Sentence was denied on August 26, 1996.
The defendant now appeals his conviction and sentence.

*1370 ASSIGNMENTS OF ERROR
The defendant claims the following sixteen assignments of error:
1. Defendant was denied effective assistance of counsel in violation of his rights under the Sixth Amendment of the United States Constitution and under the Louisiana Constitution of 1974, Article 1, section 13.
2. The trial court erred at the habitual offender hearing in admitting documents from the State of Texas introduced by the prosecutor.
3. The trial court erred in finding that alleged prior convictions of Defendant in the State of Texas amounted to felonies as required for predicate offenses to find a defendant a habitual offender.
4. The trial court erred in finding Defendant a third time felony offender.
5. The trial court erred in sentencing Defendant as a third time felony offender.
6. The trial court erred in that the sentence imposed upon Defendant amounted to cruel and unusual punishment such as is prohibited by the United States Constitution Eight Amendment, and the Louisiana Constitution of 1974, Article 1, Section 20.
7. The trial court erred in denying Defendant's Motion for Post-Verdict Judgment of Acquittal.
8. The trial court erred in denying Defendant's Motion to Reconsider Sentence pursuant to Louisiana Code of Criminal Procedure, Article 881.1 in that the trial court applied the Habitual Offender law to enhance the sentence on each of two counts in Defendant's bill of information.
9. The trial court erred in denying Defendant's Motion to Reconsider Sentence pursuant to Louisiana Code of Criminal Procedure, Article 881.1 in that the sentence constituted cruel and unusual punishment.
10. The verdict is contrary to the law and the evidence in that the State never introduced any physical evidence proving Defendant was present.
11. The verdict was contrary to the law and evidence with respect to count 1 in that the State did not prove Defendant entered "the dwelling of James Guillory" as charged in the Bill of Information.
12. The verdict was against the law and evidence with respect to count 11 in that the State failed to prove the vehicle was entered without authority, as charged in the Bill of Information.
13. Defendant's convictions are based upon improper closing argument by the prosecution.
14. Defendant was denied his right to a fair trial, guaranteed to him under the Sixth Amendment of the United States Constitution and under Article 1, sections 16 and 17 of the Louisiana Constitution of 1974 when the prosecutor improperly referred to "defendant's evidence" during voir dire of juror Elizabeth LaCombe.
15. Defendant was denied his right to a fair trial guaranteed to him under the Sixth Amendment of the United States Constitution and under Article 1, sections 16 and 17 of the Louisiana Constitution of 1974 when juror Sylvia Eagins's answers during voir dire indicated through the trial court that she might require the Defendant to take the stand to prove that he is innocent.
16. Defendant was denied his right to a fair trial guaranteed to him under the Sixth Amendment of the United States Constitution and under Article 1, sections 16 and 17 of the Louisiana Constitution of 1974 when alternate juror Fay Guillot should have been excused because of a prior relationship with Assistant District Attorney Renee Roy who helped try the case.

LAW

ERRORS PATENT
A review of the record reveals two errors patent. First, the record suggests that the trial court did not give the defendant credit toward service of his sentence for time spent in actual custody before the imposition *1371 of sentence. Thus, this court will amend the sentence to reflect that the defendant is given credit for time served before the execution of the sentence. See La.Code Crim.P. art. 882 A. Also, we remand the case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La. App. 3 Cir. 5/4/94); 640 So.2d 561, 564, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858. See also La.R.S. 15:529.1(D)(3).
Second, the record shows that the court did not inform the defendant of the three-year prescriptive period for post-conviction relief. La.Code Crim.P. art. 930.8. Although the minutes reflect that the lower court gave the defendant his 930.8 notice at sentencing, the transcript of sentencing does not indicate that the notice was given. It is well-settled that where the transcript and the minutes conflict, the transcript controls. La. Code Crim.P. art. 921. Thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

ASSIGNMENTS OF ERROR NUMBERS 10 AND 11
Pursuant to State v. Hearold, 603 So.2d 731 (La.1992), we will first consider the defendant's tenth and eleventh assignments of error in which he contends that the evidence was insufficient to support the jury's verdict of guilty of two counts of simple burglary.
In Hearold, 603 So.2d at 734, the Supreme Court stated:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)... [and] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)....
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
In order to obtain a conviction for simple burglary, the elements of the crime must be proven beyond a reasonable doubt. The elements of the crime at issue, simple burglary, are contained in La.R.S. 14:62:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
Like most felonies, burglary consists of an act element and an intent element. La.R.S. 14:7, 14:8. The act element, or actus reus, is the unauthorized entry of a dwelling or vehicle. The intent element, or mens rea, is the specific intent to commit a theft (or other felony) in the dwelling or vehicle. State v. Maxie, 614 So.2d 1318 (La.App. 3 Cir.1993). Theft is defined by La.R.S. 14:67(A) as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or *1372 by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The defendant argues that his convictions are invalid because there was no physical evidence proving that he was present at the crime scenes. The defendant further claims that there was no evidence presented to show that he entered "the dwelling of James Guillory," as alleged in the bill of information.
However, as the state points out in its brief, there is no legal requirement that physical evidence be produced to support a conviction. The prosecution's case relied upon the testimony of the victims, who stated that their property had been entered without authorization and that items had been removed from their premises. The defendant's three accomplices testified as state witnesses and affirmed that the defendant was at both crime scenes and that the defendant participated in the burglaries, including the unauthorized entries and the subsequent takings. Furthermore, prosecutors presented testimony that showed that the defendant was the driver and "ringleader" of the group. Therefore, under the Jackson standard, the State had properly proved the elements of the crime. Thus, the defendant's tenth assignment of error has no merit.
The defendant's second argument regarding the language in the bill of information and the evidence, is actually one of notice. In the case sub judice, the bill of information does contain a possible error. The bill charges the defendant with entering the "dwelling of James Guillory." However, the trial evidence showed that the defendant actually entered a shed attached to the victim's carport, which was in turn attached to the Guillory home. A bill of information informs a defendant of the charge or charges against which he must prepare to defend himself. Further details are provided in the bill of particulars. La.Code Crim.P. arts. 463, 464, 484; State v. Hammontree, 363 So.2d 1364 (La.1978). See also State v. Bordenave, 93-1682 (La.App. 4 Cir. 8/23/95); 660 So.2d 1207, reversed on other grounds, 95-2328 (La.4/26/96); 678 So.2d 19.
At trial, the state provided testimony to indicate that Guillory's shed was connected to the carport, which was, in turn, connected to Guillory's dwelling. Thus, under the statute and jurisprudence, the shed is a "structure" within the meaning of La.R.S. 14:62. However, the shed may also be considered a part of the victim's "dwelling." State v. Freeman, 539 So.2d 739, 743 (La.App. 3 Cir.), writ denied, 543 So.2d 17 (La.1989). See also State v. Harris, 470 So.2d 601 (La.App. 1 Cir.), writ denied, 477 So.2d 1123 (La.1985). Therefore, the bill's language cannot be said to have misled the defendant through faulty notice. The bill clearly charges the defendant under La.R.S. 14:62 and states the essential elements of the offense. When the defendant filed a request for a bill of particulars, the state's answer included statements from the defendant's three accomplices. All of the statements implicated the defendant and mentioned Guillory's shed and the frozen meat.
In State v. Duncan, 94-1563 (La.App. 1 Cir. 12/15/95); 667 So.2d 1141, the court noted that a bill failed to identify the "structure" which was burglarized. The first circuit determined that the error was harmless, as the defendant was not surprised or prejudiced by the omission. Id.; See also State v. Morris, 457 So.2d 119 (La.App. 2 Cir.1984). Other cases have held that an incorrect address in a bill is likewise harmless. State v. Sheppard, 466 So.2d 493 (La.App. 1 Cir.1985); State v. Lewis, 288 So.2d 324 (La.1974).
In the case sub judice, the facts included in the bill of particulars and the bill of information properly provided the defendant with notice of the charges against him. Therefore, the error, if any, regarding the use of the word "dwelling" in the bill of information, was harmless.
For the reasons discussed above, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER 7
We address this assignment next, because it concerns the district court's denial of the defendant's Motion for Post Verdict Judgment of Acquittal, which is reviewed under *1373 the Jackson standard. La.Code Crim.P. art 821. As was determined above, the state presented sufficient evidence of the charged burglaries.
The defendant's current counsel entered the case after the original Motion for Post Verdict Judgment of Acquittal was filed and argued it as a motion to reconsider his adjudication as a habitual offender. He does the same on appeal. However, a Motion for Post Verdict Judgment of Acquittal is not a proper vehicle for challenging a habitual offender adjudication. Article 821's Jackson standard does not apply to reviews of habitual offender adjudications. When such an adjudication is reviewed, the sole issue presented for our determination is whether evidence was introduced to support a trial judge's finding that the defendant is the same person as the previously-convicted felon. State v. Young, 27,237 (La.App. 2 Cir. 8/23/95); 660 So.2d 548.
Therefore, this assignment will not be considered by this court. The issues raised by the defendant regarding the habitual offender adjudication will be addressed as they arise in his other assignments of error.

ASSIGNMENT OF ERROR NUMBER 1
The defendant has explicitly abandoned this assignment of error in his brief.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the defendant argues that the district court erred when it admitted documents from the state of Texas at the habitual offender hearing. On appeal, the defendant contends that the Texas documents labeled S-2, S-7, and S-9 were not properly authenticated. At the habitual offender proceeding, defense counsel also objected to the introduction of S-8, for the same reasons that he objected to the aforementioned exhibits, but defense counsel did not include his objection to S-8 in his current argument.
At the habitual offender hearing, the defendant objected to the introduction of state's exhibit S-2, records from the "Criminal Records Section" of Jefferson County, Texas. Exhibit S-2 included a photograph of the defendant, a rap sheet, and a set of fingerprint records. Defense counsel maintained that S-2 was not properly authenticated, because while some pages contained a seal, others did not. The trial court overruled the defense's objection. Later, the prosecution offered S-7, records from Harris County, Texas. Exhibit S-7 included copies of a bill of indictment, a judgment, an amended bill of indictment, and a "bill of costs." Again counsel objected, and again counsel was overruled. The state then presented exhibit S-8, which is a duplication of exhibit S-7, except that it lacked the amended bill, and added a pair of otherwise blank pages bearing the stamp of the Harris County District Clerk.
In each instance, the prosecution responded to the defendant's objections by stating that the documents were presented to the court as sent by the Texas authorities. The lower court apparently accepted this argument, as it overruled each of the defendant's objections. Defense counsel also objected to S-9, an exhibit that included documents similar to those in S-8 and S-7, but relating to a different charge. Defense counsel noted that the judgment included in S-9 lacked certification. The court overruled the objection without comment from the state. In addition, before the State called its witnesses, the defendant re-urged its objections.
The habitual offender statute, La.R.S. 15:529.1, has its own certification provisions at paragraph (F) as follows:
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a *1374 pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
It is well-settled that other methods of certification are also available to prosecutors. To this end, the State's brief cites La.Code Evid. art. 901, which, in pertinent part, reads:
A. General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
B. Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:
* * * * * *
(7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.
In addition, La.Code Evid. art. 902 states, in pertinent part:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(2) Domestic public documents not under seal. (a) Domestic public documents generally. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in Paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
* * * * * *
(4) Presumptions under Acts of Congress and the Louisiana Legislature. Any signature, document, or other matter declared by Act of Congress or by Act of the Louisiana Legislature to be presumptively or prima facie genuine or authentic.
* * * * * *
(8) Authentic acts, acknowledge acts, and other instruments attested by witnesses. (a) Authentic acts, acts under private signature duly acknowledged, and instruments attested by witnesses and accompanied by affidavits as provided by Louisiana law, whether executed in Louisiana or elsewhere. (b) Documents executed in a jurisdiction other than Louisiana accompanied by a certificate of acknowledgment executed in the manner provided by the laws of that jurisdiction by a notary public or other officer authorized by law to take acknowledgments.
Louisiana courts have also applied the provisions of 28 U.S.C. 1738 and 28 U.S.C. 1739, together with article 902(4), when faced with authentication problems in habitual offender proceedings. 28 U.S.C. 1738, reads:
The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such *1375 State, Territory or Possession from which they are taken.
Its companion statute, 28 U.S.C. 1739, reads:
All nonjudicial records or books kept in any public office of any State, Territory, or Possession of the United States, or copies thereof, shall be proved or admitted in any court of office in any other State, Territory, or Possession by the attestation of the custodian of such records or books, and the seal of his office annexed, if there be a seal, together with a certificate of a judge of a court of record of the county, parish, or district in which such office may be kept, or of the Governor, or secretary of state, the chancellor or keeper of the great seal, of the State, Territory, or possession that the said attestation is in due form and by the proper officers.
If the certificate is given by a judge, it shall be further authenticated by the clerk or prothonotary of the court, who shall certify, under his hand and the seal of his office, that such judge is duly commissioned and qualified; or, if given by such Governor, secretary, chancellor, or keeper of the great seal, it shall be under the great seal of the State, Territory, or Possession in which it is made.
Such records or books, or copies thereof, so authenticated, shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken.
In State v. Langlois, 620 So.2d 1193 (La. App. 4 Cir.), writ denied, 625 So.2d 1042 (La.1993), a case involving an authentication problem similar to that in the case sub judice, the fourth circuit conducted a detailed discussion of the application of the aforementioned statutes.
Next, defendant argues that the trial court erred in adjudicating him a fourth offender under R.S. 15:529.1 because the State's documentary evidence of his prior convictions and identity were not properly certified or authenticated.
To prove the multiple bill, the State introduced State's exhibits 1, 2, 3, and 4. Exhibit S-1 was stipulated to be the fingerprints of the defendant taken in open court on the day of the hearing. S-2 related to a 1982 California conviction; S-3 to a 1968 Florida conviction; and S-4 to a 1965 California conviction.
L.C.E. art. 902(1) does not require extrinsic evidence of authenticity if that document bears a seal purporting to be that of the United States or any state thereof and a signature purporting to be an attestation or execution. If the officer attesting to the document does not have a seal, then L.C.E. art. 902(2) provides that the document is self-authenticating if it bears the seal of the official who certifies the signature and capacity of the original signer. Thus, under either art. 902(1) or 902(2), a seal must be on the document.
Only the documents in S-3 are certified and bear the seal of the clerk of the Circuit Court in Hillsborough County, Florida. S-3 contains a certified set of fingerprints identified as the defendant's by Officer William Sable. Therefore, the trial court did not err in finding that the defendant had previously been convicted of murder in Florida.
However, the trial court erroneously admitted and adjudicated defendant a quadruple offender based upon the documents in S-2 and S-4 because improperly authenticated fingerprints cannot be used to prove identity. State v. Harris, 510 So.2d 439 (La.App. 1st Cir.1987) writ den. 516 So.2d 129.
Id. at 1195-1196.
In light of this discussion, and the statutes cited previously, it seems the documents introduced in the present case, with the possible exception of S-2, were not properly authenticated. Documents produced outside the State of Louisiana require either official seals, or multiple attestations, or both. As the documents at issue do not meet such requirements, the lower court erred by authenticating them. The State argues "there is no standard form necessary to introduce records of a public body." Strictly speaking, this is true. However, it is clear that there *1376 are statutory standards for authentication, and the State did not meet them.
Exhibit S-2 has a notarial stamp on its first page, which certifies that Deputy Randy Franks is the records custodian for the Jefferson County Jail and that the other pages are true and correct copies of the county records of Kennerson's criminal history. It is signed by the named deputy and by a notary. Ergo, La.Code Evid. art. 902(8) would seem to apply. However, because paragraphs 902(1) and 902(2) are the more particular provisions, those provisions govern. These paragraphs, along with the federal statutes, are rather specific concerning the requirements for official seals and multiple attestations as to the identity of the first certifying official. Under 902(1) and 902(2), the secondary attestations must be made by other government officials. If the authentication process merely requires an out-of-state deputy to obtain the stamp of an out-of-state notary, then paragraphs 902(1) and 902(2) would be meaningless. Thus, S-2 should not have been accepted by the lower court. In addition, exhibits S-7 and S-9 also appear to lack the proper seals or attestations and, therefore, should not have been accepted.
The defendant does not re-urge his objections as to S-8 on appeal, but did object to it below. S-8's second and fifth pages, otherwise blank, bear identical stamped attestations that the copies are true and correct. They are dated, and signed by the district clerk of Harris County, Texas, under the language, "witness my official hand and seal of office." No official seal, other than the quoted language, appears.[1] Articles 902 and 905, read together, however, require either an official seal or multiple attestations of authenticity in order for an out-of-state document to be deemed genuine. It is possible the clerk's stamp is considered a sufficient "seal" in Texas, but the state made no showing on this point. Therefore, exhibit S-8 would also lack proper authentication. However, as noted earlier, the defendant does not argue S-8 on appeal.
Under this court's careful analysis, it is apparent that none of the contested exhibits were properly authenticated. The Code of Evidence and the Habitual Offender statute give prosecutors a plethora of procedures for authenticating out-of-state documents at habitual offender proceedings. In the case sub judice, the available procedures were not used. As previously noted, the defense's objections were met only with comments from the State that included: "[T]hat's the manner in which those documents were submitted to me," and "[t]hat is the manner in which those documents were sent to my office." However, these remarks do not constitute an argument relevant to the obvious authentication problems. Under La.R.S. 15:529, it is the state's burden to prove an offender is a habitual offender; therefore, it is also the state's responsibility to produce authentic, admissible documents in order to meet its burden. However, as will be discussed below, these authentication errors are harmless.
The defendant's objection regarding hearsay also fail, because the properly authenticated exhibits, S-3, S-4, S-5, and S-6 are clearly public records of the type contemplated in La.Code Evid. art. 803(8)(a)(I) and (ii):
(8) Public records and reports. (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:

*1377 (I) Its regularly conducted and regularly recorded activities;
(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report....
Thus, any error as to the contested exhibits would be harmless. Furthermore, because the contested exhibits were not properly authenticated, we need not discuss the hearsay issue as it relates to them.
However, this court recognizes that the defendant stated on the record that he had no objection to the admission of exhibits S-3, S-4, S-5, or S-6. Further, he does not contest them on appeal. Exhibits S-3, S-4, and S-5 show that the defendant pled guilty to three offenses in Jefferson County, Texas, on April 12, 1993. These crimes were counted as one offense for purposes of the defendant's multiple offender adjudication. The S-6 documents showed that the defendant pled guilty to two offenses in Harris County, Texas, on May 2, 1990. These crimes were part of a group of offenses that were also counted as one at the defendant's multiple offender adjudication. Thus, even without the objectionable exhibits which are the basis for this assignment of error, it appears that the state has produced sufficient evidence to prove that the defendant is a third habitual offender.
Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error, the defendant argues that the trial court erred in finding that his prior convictions in Texas amounted to felonies in Louisiana, as required by La.R.S. 15:529.1(D)(1)(b). Therefore, the defendant contends that the trial court's finding of third habitual offender status is erroneous. This assignment of error is well taken.
La.R.S. 15:529.1(D)(1)(b) reads, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
(Emphasis added.)
The record reveals no written response by the defense to the state's "Motion for Sentencing Under the Habitual Offender Law," or to the multiple offender bill. La.R.S. 15:529.1 requires such a response, and one circuit has held that such an answer is required to preserve a defendant's appellate claims. State v. Lorio, 94-2591 (La.App. 4 Cir. 9/28/95); 662 So.2d 128. However, the Lorio court noted that 15:529.1(D)(1)(b) was written "to place the burden of challenging a predicate conviction ... on the defendant." Id. at 129. Further, the statutory language contemplates a challenge to the constitutional validity of the predicate convictions. Although the Lorio court refused to consider the defendant's challenge to the predicate offense, it did address his claim that the state had failed to prove the "cleansing period" had not elapsed. Id. at 129-131. In the case sub judice, the defendant is not challenging the validity of the predicate offenses; rather, he is attacking a proof issue. Therefore, the defendant's argument appears more analogous to the issue considered in Lorio, and as such, this assignment will be considered by this court.
The defendant's adjudication as a third habitual offender was based upon the following groups of crimes: (1) a set of offenses committed in Harris County, Texas; (2) a set *1378 of offenses committed in Jefferson County, Texas; and (3) the pair of simple burglaries recently committed in Avoyelles Parish, Louisiana. The third set of crimes is not at issue here. As to the Harris County crimes, evidenced by exhibit S-6, the defendant asserts that the Texas offense of "unauthorized use of a motor vehicle" was not proven to be equivalent to a felony in Louisiana as required by 15:529.1. Both parties' briefs suggest the nearest Louisiana equivalent is La.R.S. 14:68.4, "unauthorized use of a motor vehicle." However, in order to determine whether an out-of-state offense was equivalent to a Louisiana felony, the date of the commission of the crime becomes extremely important. See State v. Glenn, 493 So.2d 806 (La.App. 2 Cir.1986), sentence vacated on other grounds, 513 So.2d 445 (La. App. 2 Cir.1987). In 1990, at the time of the commission of the crime, La.R.S. 14:68.4 was not in existence. At that time, the most analogous Louisiana statute was La.R.S. 14:68, "unauthorized use of a movable." Thus, the Texas offense was not necessarily considered to be a felony under Louisiana law. Furthermore, a review of the record indicates that the prosecution made no attempt to affirmatively show that the prior convictions in Harris County, Texas, were, in fact, felonies in Louisiana at the time they were committed.
First, although La.R.S. 15:424 provides that the published law of other states is prima facie evidence of the law of that state, without the necessity of introducing it into evidence, the State should, at a minimum, cite the pertinent statute for the record. The relevant Texas statute, section 31.07 of the Texas Penal Code, states:
(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.
(b) An offense under this section is a state jail felony.
As noted above, in 1990, Louisiana's nearest equivalent crime was La.R.S. 14:68, "unauthorized use of a movable," which read:
Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.
Whoever commits the crime of unauthorized use of a movable having a value of one thousand dollars or less shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having a value in excess of one thousand dollars shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than three years, or both.
The state made no showing that the vehicle "used" by the defendant in Texas had a value greater than one thousand dollars ($1,000.00). Therefore, there was no showing that the Texas crime would have been a felony under La.R.S. 14:68, and the defendant's argument on this point is well taken. The Harris County offenses, "unauthorized use of a motor vehicle," as presented in exhibit S-6, were not shown to be equivalent to Louisiana felonies.
Second, regarding the Jefferson County offenses, the defendant also argues that his conviction for burglary of a vehicle, a Suburban belonging to victim Zack Byrd, was not proven to be a Louisiana felony. The Texas documents in S-3 show that, although the defendant was indicted for theft, he actually pled guilty to "burglary of a vehicle." The statute, at section 30.04 of the Texas Penal Code, reads:
(a) A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft.
(b) For purposes of this section, "enter" means to intrude:
(1) any part of the body; or
(2) any physical object connected with the body.

*1379 (c) An offense under this section is a Class A misdemeanor.
When the defendant committed the crime in 1992, the closest Louisiana statute was La. R.S. 14:62, "simple burglary," which read:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60.
It is clear that these laws are sufficiently similar to demonstrate that the predicate Texas crime would have been a felony if committed in Louisiana.
Third, the defendant contends that another Jefferson County conviction for "burglary of a vehicle" was not shown to be a Louisiana felony. The indictment indicates that the crime consisted of the breaking and entering into a truck belonging to Ellis Simpson "with intent to commit theft." The defendant argues that the equivalent Louisiana statute, La.R.S. 14:62, requires unauthorized entry, with intent to commit a theft therein. The defendant was convicted under Texas Penal Code section 30.04, reproduced above. Considering the language of that section, along with La.R.S. 14:62, this court finds the language to be sufficiently similar so as to demonstrate that the Texas offense was equivalent to a Louisiana felony. Therefore, the defendant's argument on this point fails.
Finally, the defendant contests the use of another Jefferson County conviction. In his argument, the defendant asserts that his conviction for stealing victim Richard Hughes' van was not proven to be equivalent to a Louisiana felony. It is not clear whether the Texas statute requires an intent on the part of the defendant to permanently deprive the owner of his property. The intent on the part of the defendant to permanently deprive the owner of his property is, however, an essential element of Louisiana's theft statute, La.R.S. 14:67. Therefore, the Texas offense appears more analogous to La.R.S. 14:68, "unauthorized use of a movable." This offense is not a felony if the movable has a value of one thousand dollars or less. Thus, the value of the thing taken is a key issue. See also State v. Smith, 95-1827 (La.App. 1 Cir. 9/27/96); 681 So.2d 978.
The 1992 indictment, as evidenced by exhibit S-5, charges the defendant with stealing a van "of the value of at least Seven Hundred Fifty Dollars and less than Twenty Thousand Dollars." It appears that the threshold for felony theft is now higher, as the present Texas statute sets the limits between fifteen hundred dollars and twenty thousand dollars. However, in considering the bill's language and with no evidence regarding the dollar value of the van, we can only conclude that the state did not prove that this offense was equivalent to a Louisiana felony at the time it was committed. Therefore, the defendant's argument on this point is valid.
Based on this court's analysis, the Harris County convictions and one of the Jefferson County convictions were not shown to be equivalent to Louisiana felonies, as required by La.R.S. 15:529.1. As the Jefferson County convictions counted as one predicate offense, the defendant, at most, was proven to be a second habitual offender, and should be resentenced as such. Of course, the state would have the option of once again attempting to prove that the defendant is a third habitual offender, as double jeopardy does not apply to habitual offender adjudications. State v. Martin, 599 So.2d 422 (La.App. 4 Cir.1992).
Considering the merits of this particular assignment of error, the defendant's adjudication and sentence as a third habitual offender should be reversed and vacated, and the case remanded for proceedings in accord with this court's opinion. The state has the option of attempting to prove the defendant is a third habitual offender.

ASSIGNMENT OF ERROR NUMBERS 5 AND 8
This court will address these two assignments of error together, as did both the defendant and the state. The defendant's fifth assignment of error urges that the district court erred in sentencing the defendant as a third habitual offender. The defendant's eighth assignment of error argues the court erred in denying his Motion to Reconsider Sentence in that the court applied the habitual offender law to enhance both of his *1380 burglary sentences. For the following reasons, these assignments of error lack merit.
The defendant correctly notes that a defendant cannot be sentenced as a multiple offender on multiple counts where the convictions on more than one count were entered on the same day and the offenses arose out of a single criminal episode. State v. Guillory, 598 So.2d 1299 (La.App. 3 Cir. 1992), affirmed after remand, 93-1031 (La. App. 3 Cir. 4/27/94); 640 So.2d 427, writ denied, 94-1380 (La.9/30/94); 642 So.2d 869. The state does not disagree but argues that the counts did not arise "out of a single criminal episode." The state's contention appears to be correct. The facts of the case indicate that once the defendant and his accomplices finished burglarizing Bordelon's trucks, one "criminal episode" was complete, they then drove to Dr. Guillory's home, where they participated in a second, different "criminal episode." As the fourth circuit explained in State v. Ward, 94-490, pp. 12-14 (La.App. 4 Cir. 2/29/96); 670 So.2d 562, 568-69:
Thus under the Supreme Court's most recent pronouncement in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991) only multiple convictions arising out of the same criminal act or episode and obtained on the same date will be considered as a single conviction for purposes of the habitual offender law....
Under Porter, the new general rule is that the trial court can multiple bill convictions rendered on the same day. The new limited exclusion is that the "one day, one conviction" rule only applies in the following ... cases:
....
(2) When there is a prior final felony conviction before the case currently at issue, multiple counts arising out of a single criminal act or episode or incident or event cannot each be enhanced under the multiple offender statute. If, for example, Mr. X had a prior final felony conviction from 1994 and then committed the armed robberies in 1996 against the A couple described above. Then the trial court could use the 1994 conviction as the predicate for only one of the 1996 offenses, because both of the 1996 offenses arise out of the same criminal act or episode or incident or event. If, however, Mr. X had a prior final felony conviction in 1994 and he committed the armed robberies against Mr. and Mrs. A on January 1 at 2:01 p.m. discussed above, and then Mr. X traveled two blocks over where he robbed Mr. B at gunpoint on January 1 at 2:45 p.m., then the trial court could use the 1994 felony as the predicate conviction for only one of the A robberies as discussed above, but could also use the 1994 felony as the predicate for the B robbery, because the B robbery arises out of a different criminal act or episode or incident or event than the A robberies. Thus the "one day, one conviction" rule is misnamed and should be known as the "one event, one day, one conviction" rule.
(Emphasis supplied). Under this rationale, the criminal activity that occurred in the case sub judice constituted more than one criminal episode, and therefore, the defendant's sentences were properly enhanced. For the foregoing reasons, these assignments of error lack merit.

ASSIGNMENTS OF ERROR NUMBERS 6 AND 9
This Court will address the defendant's sixth and ninth assignments of error together, as they rely upon the same legal argument. The defendant alleges that his sentence of two consecutive twenty-year terms is excessive. Having already determined that the prosecution failed to prove that the defendant is a third habitual offender and having already determined that the defendant should be resentenced, this point is moot. However, this court feels compelled to address the issue, pursuant to the authority granted by La.Code Crim.P. art. 881.4, which reads, in pertinent part:
A. If the appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentence by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose.

(Emphasis added.)
At sentencing, the district court stated:
BY THE COURT:

*1381 The court, having presided over this trial, wherein Mr. Kennerson was found guilty of two counts of SIMPLE BURGLARY, is familiar with the facts of the case. The court has been provided with a Pre-sentence Investigation Report, and is familiar with the input and the information therein.
Now, the record will reflect, and I'm going to make, as a part of the record, the Pre-sentence Investigation Report, because it has been, at the discretion of the court, revealed to the parties involved; the defense counsel has it, has been made aware of it, and I'm going to put it into the record. I'm going to consider the fact that this comes pursuant to a multi-billing, pursuant to the Habitual Offender Law, it's LRS 15:529.1 in the enhancement of the penalties as provided in that Codal Article, and, will refer to LRS 14:62, SIMPLE BURGLARY. And, as counsel has agreed with the court, the range of sentence avaiable [sic] to the court, as to SIMPLE BURGLARY, given the previous determination just to the multiple offender status would be between eight and 24 years. The court is of the opinion that Mr. Kennerson is charged and has been convicted of two counts of SIMPLE BURGLARY. These are separate distince [sic] acts, and he will, therefore, be sentenced this date as to each separate distince [sic] conviction in accordance with the provisions that I've relied upon and stated for the record.
Now, the court has looked at 894.1, the Sentencing Guidelines that are generally relied upon by this court in assessing and making determinations of the appropriatness [sic] of sentences.
I'm going to point out that Mr. Kennerson, unfortunately, has, in this court's judgment, involved himself in a background and a lot of time for crime. Mr. Kennerson has served jail time; he has been subject to probationary conditions system, not only Louisiana jurisdiction, but other jurisdictions, have given Mr. Kennerson the benefit of a lot of a lot of [sic] breaks and suspended sentences, and some very lenient jail sentences commensurate with the crimes that he's been charged with, particularly in Houston and in the Texas jurisdiction....
* * * * * *
Mr. Kennerson, with the days of Jessie James, and burglarizing and stealing, and carrying on in these communities, like this, are over for you, sir. You have inflicted a lot of punishment on people in this parish, while they were sleeping, in an effort to be secured in their homes, you invaded their vehicles, their sheds, and so forth, and you stole from them, and you were the ring leader, in this case. You served time before; it hasn't done you any good. You'd get out of jail, and you'd resort to this kind of criminal activity. I have sat and I have watched, throughout your trial, your demeanor, and I want to point this out for the record: Mr. Kennerson, throughout all of these proceedings, has grinned and smiled and laughed and has shown no display at all, from this court's opinion, any remorse, regret, or otherwise. He maintained his innocence the whole time. He has an attitude of resentment and, what I would determine, hatred for the system. He's had trouble with the proceedings; he's, at times, disrupted proceedings, particularly, during the trial. He has no remorse for the victims involved, and to be quite honest, Mr. Kennerson, you're a dangerous man. You really are a dangerous man in society. Only the good Lord has protected these people from approaching you while you were in the commission of these crimes, otherwise, I think, you'd be charged with more serious crimes. For that reason, we built jails, and we hire people to take care of career criminals.
These reasons would seem to justify the trial court's imposition of consecutive sentences, as required by State v. Thompson, 544 So.2d 421 (La.App. 3 Cir.), writ denied, 550 So.2d 626 (La.1989). The materials introduced at the habitual offender hearing and the pre-sentence investigation (PSI) report show that the defendant is a career criminal. Further, this court has already observed that both burglary counts were subject to enhancement under La.R.S. 15:529.1. The simple burglary law, unenhanced, carries a *1382 twelve-year maximum sentence. La.R.S. 14:62. Under 15:529.1(a)(2)(b), the defendant was subject to a sentencing range of eight to twenty-four years, as the lower court observed. Thus, the consecutive twenty-year sentences do not exceed the statutory range.
Focusing on the constitutional claim advanced by the defendant, the jurisprudence suggests that the defendant's individual sentences are neither shocking nor grossly disproportionate to the severity of the crimes committed. State v. Martin, 28,489 (La.App. 2 Cir. 8/21/96); 679 So.2d 557 (twenty-five years not excessive for fourth habitual offender convicted of simple burglary of a dwelling); State v. Anderson, 603 So.2d 780 (La.App. 1 Cir.1992) (twenty years at hard labor not excessive for second felony offender convicted of simple burglary; however, a writ was granted, requiring an "articulated justification for the near-maximum sentence"); Anderson, 609 So.2d 831 (La.1992); State v. Jones, 537 So.2d 848 (La.App. 5 Cir.1989) (fifteen years for a second offender convicted of simple burglary "clearly not excessive").
Despite the fact that the individual sentences appear to be legally sound, their combined effect is disproportionate to the crimes committed. The facts of the case indicate that: the crimes were simple burglaries; the burglars did not try to enter the victims' homes, and the burglars did not manifest a violent intent or act toward the victims. In addition, the value of the items taken from Mr. Bordelon's truck is unclear, while the burglars took a tire and $75 worth of frozen meat from Mr. Guillory's shed. Although the defendant is clearly a career thief and burglar, which we in no way intend to condone or minimize, he does not have a violent history. Thus, the record lacks evidence supporting the lower court's characterization of the defendant as a "dangerous man." Also, this court notes that, at the time of sentencing, the defendant was thirtyone years old. Therefore, the forty-year combined sentence will effectively span the remainder of his life, although "good time" diminution of sentence is available to the defendant pursuant to La.R.S. 15:571.3.
In State v. Soraparu, 93-1636, pp. 7-8 (La.App. 4 Cir. 1/19/95); 649 So.2d 1100, 1104, the fourth circuit stated:
Article I, Sec. 20 of the Louisiana Constitution (West 1977) provides that "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is considered excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." Generally, a reviewing court must determine whether the trial court adequately complied with the sentencing guidelines set forth in La.Code Crim.Proc. Ann. art. 894.1 (West 1984) and whether the sentence is warranted in light of the particular circumstances of the case.
....
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La. 1982). Further, each case must be decided on its own facts. State v. Humphrey, 445 So.2d 1155 (La.1984).
(Citations omitted.)
Having reviewed the aggravating factors that the trial court stated in its reasons for sentence, this court is of the opinion that a forty-year combined sentence is not proportionate to the crimes committed and constitutes a manifest abuse of discretion on the part of the trial court. Certainly, the defendant deserves long sentences as the PSI reflects that the defendant has received a number of short-term sentences in Texas that have not dissuaded him from continuing his criminal activity. However, in reviewing the sentences, this court must ask whether a non-violent, petty criminal should spend the rest of his life in jail for stealing a tire and $75.00 worth of meat. The obvious answer to that question is no. The facts of the case do not establish that the defendant is the worst kind of offender in order to justify the imposition of two near maximum consecutive sentences and, as such, the sentence is grossly out of proportion to *1383 the severity of the crime and amounts to nothing more than the purposeless imposition of pain and suffering. A shorter sentence, to run concurrently, would be more appropriate under the circumstances of this case. La.Code Crim.P. Art. 881.4.

ASSIGNMENT OF ERROR NUMBER 12
The defendant has explicitly abandoned this assignment of error in his brief.

ASSIGNMENT OF ERROR NUMBER 13
In this assignment of error, the defendant contends that the prosecution's closing argument was improper because in it, the prosecutor made reference to the Pope, causing the jury to be unduly influenced. The following remarks were made by the prosecutor during rebuttal:
You know, if we could have the Pope as an eye witness, we'd sure bring the Pope here to testify too. We didn't have the Pope. We had the people who were involved in the crime and they pled guilty and they've taken their medicine. And they pointed to that man sitting right over there and said, "He was there with us." I hope you heard the testimony and judge whether or not they're believable.
The state argues that the defense failed to object to the remarks, as required by La. Code Crim.P. 841, the contemporaneous objection rule, which reads:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
Based on the foregoing, this assignment will not be considered by this court.

ASSIGNMENT OF ERROR NUMBER 14
In this assignment of error, the defendant contends that the state improperly referred to the case during the voir dire of juror Elizabeth LaCombe. During the voir dire, the following colloquy took place:
Q. Would you have any problem sitting on this jury?
A. No.
Q. Could you call it like you saw it?
A. Yes.
Q. You could listen to the evidence put on by the state?
A. Yes.
Q. You could listen, also, to the defendant's evidence?
A. Yes.
The defendant argues that this exchange could be interpreted as an indication to the jury pool that the defendant would, or was required to, testify. Our review of the voir dire of Ms. LaCombe by the defendant's counsel indicates that Ms. LaCombe was fully aware of the state's burden of proof and that defense counsel accepted her as a juror shortly thereafter. Once defense counsel had accepted Ms. LaCombe as a juror, the defendant waived the right to challenge her on appeal. State v. Bourque, 622 So.2d 198 (La.1993). Furthermore, there was no contemporaneous objection to the question during voir dire. La.Code Crim.P. art. 841.
Therefore, this assignment will not be considered by this court.

ASSIGNMENT OF ERROR NUMBER 15
In this assignment of error, the defendant alleges that juror Sylvia Eagins' answers during voir dire suggested she might expect him to take the stand in his own defense:
Q. Do you understand that if he does not take the stand, that is not an inference of any kind of guily [sic]; he may just be taking his lawyer's advice? Do you understand that?
A. Yes, I understand that.
Q. You wouldn't require that he do so in order to be proven, or, at least, to convince you that he is innocent?
A. I'm not sure about that.
Q. Explain that to me.
A. Well, if you're innocent, if you're innocent of a crime, I think you should be able to speak and make it known clear that you had nothing to do with it.
Q. Do you understand that the law does not require the....

*1384 A. Yes, I understand that.
Immediately afterwards, the court had the following dialogue with Ms. Eagins:
BY THE COURT:
Ms. Eagins, let me ask you a question: If the court were to instruct you, at the close of this case, that the defendant is presumed innocent, unless the state carries the burden of proof, beyond a reasonable doubt, do you have any personal convictions or problems with that?
A. No.
Q. Additionally, if I were to instruct you that the defendant has a right to remain silent; and that if he chooses to exercise that right, that no inference of guilty could be drawn from that, could you respect that instruction?
A. Yes, I can.
Q. Could you, in spite of your personal feelings, not hold that against him if he elects to do that?
A. I think I can.
Defense counsel then questioned her again, to the same effect:
BY MR. ROY:
Just to clear that up from my mind, in the event that I choose not to put my client on the stand, during the course of this trial, you said that you felt that if he didn't take the stand, it was either possible that he wasn't innocent, or that if he is innocent, he should take the stand. Would you hold it against him if he does not take the stand in this case?
A. No.
Q. Would you consider him to be guilty if he does not take the stand?
A. No.
Q. Would you think him any less innocent?
A. No.
The record reveals no challenge for cause, and Ms. Eagins was accepted shortly thereafter. In fact, Ms. Eagins was the first juror seated. Thus, the reasoning employed in the previous assignment would apply here as well, and as such, this assignment will not be considered by this court.

ASSIGNMENT OF ERROR NUMBER 16
In this, his final assignment of error, the defendant argues that the lower court erred by seating Fay Smith Guillot as the alternate juror. In support of his argument, the defense points to a case in which the prosecuting attorney had represented Ms. Guillot's sister four years prior to this trial in a social security matter. As with the previous assignment of error, the record does not indicate that the defense lodged an objection or a challenge to Ms. Guillot's appointment. Additionally, this court notes that the defendant's case was not prejudiced, because Ms. Guillot did not participate in deliberations.
Therefore, this assignment lacks merit.

CONCLUSION
Accordingly, the defendant's convictions are affirmed, but the defendant's adjudication and sentence as a third habitual offender should be reversed and vacated. The case is remanded to the trial court in order to resentence the defendant as a second felony offender and in a manner not inconsistent with this opinion.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.
NOTES
[1] Black's Law Dictionary defines "seal" as follows:

Seal. An impression upon wax, wafer, or some other tenacious substance capable of being impressed. In current practice, a particular sign (e.g. L.S.) or the word "seal" is made in lieu of an actual seal to attest the execution of the instrument.
* * * * * *
Public seal. A seal belonging to and used by one of the bureaus or departments of government, for authenticating or attesting documents, process, or records. An impression made of some device, by means of a piece of metal or other hard substance, kept and used by public authority.