# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-425

**STATE OF LOUISIANA**

**VERSUS**

**EDDIE STAGG, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 20-K-4693-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Gary J. Ortego, Judges.

**CONVICTIONS AFFIRMED.**

**Chad M. Ikerd**
**Ikerd Law Firm, LLC**
**600 Jefferson Street, Suite 903**
**Lafayette, LA 70501**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Eddie Stagg, Jr.**

**Honorable Chad Pitre**
**Twenty-Seventh Judicial District Attorney**
**Kathleen E. Ryan**
**Assistant District Attorney**
**P.O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GREMILLION, Judge.**

Defendant, Eddie Stagg, Jr., appeals his convictions for second degree murder, a violation of La.R.S. 14:30.1; attempted second degree murder, a violation of La.R.S. 14:27 and 30.1; and firearm possession by a convicted felon, a violation of La.R.S. 14:95.1. For the reasons that follow, we affirm Defendant's convictions.

## PROCEDURAL POSTURE AND EVIDENCE ADDUCED AT TRIAL

### *Procedural Posture*

Darrell "DJ" Wheeler, Jr., was shot and killed on December 19, 2020, in front of a house located at 609 Patsy Street in Opelousas, Louisiana. Defendant was indicted for DJ's murder, the attempted murder of Cleveland Roberts, and possession of a firearm by a convicted felon. Defendant's jury trial was held on April 18 through 22, 2023. A jury unanimously convicted Defendant as charged. This appeal, which is limited to whether the State proved beyond a reasonable doubt that Defendant was the person who shot DJ, followed.

### *Trial Evidence*

The State called nine witnesses: Darrell Wheeler, Sr., Brandon Harris, Evan Sumrall, Cleveland Roberts, Adam Clark, Jessica Soileau, Dr. Christopher Tape, Omarion Beavers-Enjidu,[1] and Latasha Benson. Because Defendant's assignment of error only involves his identification as the shooter, we will only discuss evidence identifying DJ's shooter.

*Adam Clark Testimony*

Adam Clark testified that DJ had driven him and his brother, Cleveland Roberts, to Clark's sister's house to launder clothes. On the way to the house, DJ received a call and said he had to "go hit a lick," which, according to Clark, meant a

---

[1] An indicted co-defendant whose testimony was compelled after the State granted him use immunity.

drug sale. Clark saw two men approach DJ. He then entered the house to use the bathroom. He heard four or five gunshots and ran outside, where he saw that DJ had been shot in the head. Clark did not know Defendant nor identify him as being one of the two men he saw approach DJ.

*Cleveland Roberts Testimony*

Roberts rode in the front seat on the way to his sister's house. DJ had a Mason jar of marijuana in his center console. When the trio arrived at the house, Roberts and Clark took the laundry inside. When Roberts walked back outside to make sure everything went smoothly with the transaction, he saw two "dudes" approach the car. Roberts walked down the walkway a bit and saw one of the two guys fist-bump DJ. They started talking, so he assumed DJ knew the guys.

Roberts testified that the guy who fist-bumped DJ was tall and wore a gray long-sleeved shirt and shorts; he was standing nearer DJ, in the doorway of the car. He had dreads "[n]ot too far past his ear." The other guy was wearing jogger pants and a hoodie "tied on his head."

Roberts was outside the house but did not witness DJ's shooting, as he had turned his back to enter the home. When Roberts heard the gunshot, he turned and looked back to see the man in the shorts holding a gun. The man in shorts fired four or five shots at Roberts before running away. The man in the hoodie had already turned away and left before the shots were fired. Roberts took cover and fired his own weapon once at his assailant.

Roberts could see the faces of neither the man in the hoodie nor the guy with the shorts, who had "a COVID mask or something" on his face. He knew Defendant, who had prior dealings with DJ. He did not know Beavers-Enjidu. Roberts testified that a few days after the shooting, he told police that Defendant was the shooter. He identified Defendant in the courtroom as the person who shot at him, but he testified

2

he did not see Defendant shoot DJ as he had turned around when that happened. He testified that the guy with the "thing tied up on his head. . . . had done walked away" before the shooting started. On cross-examination, Roberts testified that the tall guy who was in the doorway of DJ's car was the shooter. Roberts positively identify Defendant as the man standing closer to DJ, although he could not see the man's face.

Roberts later identified Defendant in a photo lineup.

*Omarion Beavers-Enjidu Testimony*

Defendant called Beavers-Enjidu on the evening of the shooting and asked Beavers-Enjidu to accompany him on a drug buy. Beavers-Enjidu was wearing a hoodie and jogger pants. Defendant was wearing a gray sweater and shorts. Defendant picked Beavers-Enjidu up.

After parking his vehicle on Herman Street, Defendant and Beavers-Enjidu walked through Patsy Park and down Patsy Street to a car parked in front of a house. Beavers-Enjidu knew of DJ.

DJ was seated in the driver's seat of his car. Defendant handed DJ money. DJ said, "[T]his money not real," and Defendant told DJ he was "trippin'." Beavers-Enjidu had turned and begun to leave when Defendant pulled a Glock 10mm handgun from his waistband and shot DJ in the head. Beavers-Enjidu, who did not actually see Defendant shoot DJ, fled the scene. He looked back and saw Defendant shoot at the house four or five times. Defendant tossed the Glock under a trailer as they ran away.

After fleeing the scene, Defendant dropped Beavers-Enjidu off at a hotel where he had been staying. Defendant contacted Beavers-Enjidu the next day and told him he had returned to the scene and retrieved the Glock.

3

Beavers-Enjidu denied any knowledge of Defendant's intent to shoot DJ or anyone else. He identified Defendant in two photograph lineups and in open court. He denied shooting DJ.

*Detective Mike Hidalgo testimony*

Detective Mike Hidalgo of the Opelousas Police Department was called to the crime scene on the evening of December 19, 2020. He subsequently interviewed Roberts and Clark and through those interviews, he developed Defendant as the suspected shooter. After Roberts identified Defendant in the photo lineup, Detective Hidalgo obtained a warrant for his arrest. The second suspect, Beavers-Enjidu, was brought into the station and interviewed. Beavers-Enjidu told police that when Defendant handed DJ fake money to purchase the marijuana, an argument ensued, and Defendant shot DJ. At that point, Beavers-Enjidu ran from the scene. He subsequently heard several more shots fired. According to Beavers-Enjidu, he was armed with a Smith and Wesson .40 caliber gun, and Defendant was armed with a 10mm gun.

The Monday following the shooting, Detective Hidalgo went to the vehicle impound yard and searched DJ's car. He located a bullet lodged in the front passenger door and a fake $100 bill labeled for motion picture use only.

*State's Exhibit 3*

State's Exhibit 3 is a video recording of the street. The video was played for the jury during Beavers-Enjidu's testimony. It depicts a man running in pants and a hoodie. A second man is seen running behind the man in pants and has no covering over his head. Beavers-Enjidu was the lead runner and Defendant was the trailing runner.

4

## DISCUSSION AND ANALYSIS

When reviewing the sufficiency of the evidence, the appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. We should not second-guess the trier of fact's credibility assessments. *Id.* In *State v. Johnson*, 23-79, pp. 9—10 (La.App. 3 Cir. 9/27/23), 372 So.3d 433, 438, this court further discussed sufficiency of the evidence in the context of a defendant's identification as the perpetrator of an offense:

> Louisiana law requires the State "to negate any reasonable probability of misidentification" when the key issue in a case is the defendant's identity. *State v. Hughes*, 05-992, p. 5 (La. 11/29/06), 943 So.2d 1047, 1051 (citing *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297, *cert. denied*, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)). However, "[p]ositive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations." *Id.* (citations omitted).

Defendant was convicted of second degree murder, a violation of La.R.S. 14:30.1. The elements of second degree murder are 1) "the killing of a human being" and 2) "[w]hen the offender has specific intent to kill or inflict great bodily harm[.]" Attempt is defined in La.R.S. 14:27(A) as:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Defendant attacks Roberts' identification of him on several grounds: Roberts knew him from previous interactions; Roberts testified that he could not see the face of the shooter because it was masked; Roberts had turned away before DJ was shot, and when he turned around, Roberts' attention was drawn to the gun that was firing at him; and Roberts testified that the shooter had short dreads, whereas Defendant's dreads were longer than Roberts testified.

Defendant points out that Beavers-Enjidu knew about the fake movie money and the amount of the bill, and although it was said DJ made a statement about the money being fake, he did not comment on the amount of the bill. Defendant claims these small facts were not likely something the non-shooter would know just by observing the drug transaction. Thus, Defendant contends it is more likely that Beavers-Enjidu was the shooter. He notes that the State compelled Beavers-Enjidu's testimony and gave him "use immunity." Finally, Defendant argues that Roberts testified Defendant was the taller of the two men, but it was evident that Beavers-Enjidu was actually taller than Defendant. Defendant contends that Roberts' testimony, at best, proved Defendant's presence at the shooting, but the State failed to negate any reasonable probability of misidentification. Defendant contends that the only person that "put the gun in [his] hand was the more likely shooter, Omarion Beavers-Enjidu."

Finally, Defendant contends that because the evidence proved only that he was present, to convict him, the State would have had to prove he was a principal to both the murder as well as the attempted murder. However, during the charge conference, the trial court removed the jury instruction addressing principals stating:

> The jury must be instructed that the state must prove the defendant had a specific intent, not merely that the defendant aided another with the intent -- with the knowledge that the other had a specific intent. . . .

6

. . . .

> . . . I think what you're saying is that if the jury were to believe that Mr. -- let's say Mr. Beavers was the shooter and Mr. Stagg was just there along for the ride, to find Stagg guilty you'd essentially have to prove that he also -- that he knew -- he also had the specific intent, right?. . . .

> . . . .

> The next sentence says, mere knowledge of the co-perpetrator's specific intent is not sufficient.

> . . . .

> I think it's too confusing and I think it's too -- under the circumstances -- under the evidence presented and Beavers['] role in the whole thing, and -- and all, I'm going to remove it.

Defendant contends the trial court was correct in determining that the State failed to prove the non-shooter had the requisite specific intent to shoot and kill DJ or Roberts.

A review of the evidence supports a finding that the State presented sufficient evidence to prove Defendant shot and killed DJ and shot at Roberts. Beavers-Enjidu testified that Defendant told him he had a gun, and although he did not witness Defendant shoot DJ, he testified that Defendant was near DJ's open car door conducting a drug transaction when he heard the shot. As Beavers-Enjidu was running from the scene, he saw Defendant shoot toward the residence approximately four or five times. Beavers-Enjidu, who testified he was wearing a hoodie (covering his head) and jogging pants, was the first person in the video capturing the two perpetrators running away from the scene. Defendant, who was not wearing anything on his head and was wearing shorts, was the second person in the video, consistent with the version of events testified to by Beavers-Enjidu and Roberts.

7

Roberts described the person closer to DJ as wearing shorts and having dreadlocks with no hood on his head. Roberts testified that before he heard the first shot, he saw the other guy (Beavers-Enjidu), who was wearing long pants and a hoodie, walk away. After the shots were fired at *him*, the guy with dreadlocks and shorts on started running in the same direction the other guy had already run.

The inconsistencies raised by Defendant on appeal were all brought out at trial, and the jury unanimously found Defendant guilty as charged. Thus, the jury must have resolved the credibility determination regarding the identity of the shooter against Defendant. Considering the jurisprudence and the testimony presented at trial, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the State proved beyond a reasonable doubt that Defendant shot DJ and then subsequently shot at Roberts. Thus, this assignment of error has no merit.

We affirm Defendant's convictions for second degree murder and attempted second degree murder.

**CONVICTIONS AFFIRMED.**