# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


### 06-1054


**STATE OF LOUISIANA**

**VERSUS**

**RICHARD ORDNER**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. CR-2004-4851
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*


**SYLVIA R. COOKS**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**AFFIRMED, AS AMENDED AND REMANDED.**

**Dmitrc I. Burnes**
**711 Washington Street**
**P.O. Box 650**
**Alexandria, LA  71309-0650**
**(318) 448-0482**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Richard Ordner**


**Douglas L. Hebert, Jr., District Attorney**
**Sherron Ashworth, Assistant District Attorney**
**P.O. Box 839**
**Oberlin, LA  70655-0839**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**COOKS, Judge.**

_____FACTS AND PROCEDURAL HISTORY

On the evening of September 3, 2004, the Defendant, Richard Ordner, was at the Uskitchitto River near Mittie, Louisiana for a party. Approximately twenty minutes after arriving at the party with his girlfriend, Jennifer Martin, four males approached his vehicle while he was sitting in the passenger seat of the vehicle. When the men were approximately fifteen feet from the vehicle, Defendant fired a shot into the air with his 9 mm pistol and the men turned and ran away. Defendant fired two more shots and one struck the victim, Jody Robinson. Defendant then ran into the woods where he discarded the gun.

On December 22, 2004, Defendant was charged by bill of information in count one with illegal use of weapons or dangerous instrumentalities, in violation of La.R.S. 14:94, and in count two with aggravated battery/discharge of firearm, in violation of La.R.S. 14:34. Defendant was arraigned on January 11, 2005 and entered a plea of not guilty.

The State filed a Notice of Intent to Seek Enhancement of Sentence under La.Code Crim.P. art. 893.3. Defendant filed a Motion in Limine and objected to the State's intent to seek enhancement of the sentence. A hearing was scheduled, but the parties waived the hearing and agreed to have the trial court rule on the motion/objection based on the briefs submitted. In its opinion and ruling dated December 12, 2005, the trial court noted the State did not specify as to which count it sought to enhance and ultimately concluded that the State could enhance only count two (aggravated battery/discharge of firearm), thereby granting the Defendant's motion as to count one and denying same as to count two.

Defendant waived his right to a jury trial, and following a bench trial, Defendant was found guilty as charged. Defendant was sentenced on count one to serve two years at hard labor with the eligibility for diminution of time, and on count two, ten years at hard labor to run concurrently and without benefit of parole, suspension of sentence and diminution of time. Defendant was also ordered to pay court costs of $994.00. A motion to reconsider sentence was filed wherein the trial court was asked to reconsider Defendant's ten year sentence. The motion was denied without reasons. Defendant now seeks an appeal, setting forth two assignments of error.

## _____ASSIGNMENT OF ERROR NO. 1

In this assignment of error, Defendant argues the trial court erred in finding him guilty because he was acting in self defense. More specifically, Defendant maintains he was in reasonable apprehension of receiving a battery when he was approached by four to six drunken men spoiling for a fight, and he took steps to defend himself, justifiably firing shots into the air. Alleging his actions were justifiable, Defendant concludes they did not provide the basis for criminal intent.

Although Defendant does not specify which conviction should be set aside in setting forth this assignment of error, he requests at the conclusion of his argument that we overturn both of his convictions. Accordingly, we will address each conviction in light of Defendant's claim of self defense.

The illegal use of a weapon is defined in La.R.S. 14:94 as ". . . the intentional or criminally negligent discharging of any firearm . . . where it is foreseeable that it may result in death or great bodily harm to a human being." Aggravated battery is defined in La.R.S. 14:34 as ". . . a battery committed with a dangerous weapon." Self defense is addressed in La.R.S. 14:19 as follows:

The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.

Defendant testified that he arrived at the river around 11:00 or 12:00 p.m., about twenty minutes before the shooting. He had been drinking beer since about 9:00 p.m. and had consumed approximtely ten beers prior to the shooting. He denied, however, that he was intoxicated.

Defendant testified he had been in a fight with Chris Darbonne, Jonathon Darbonne's brother, prior to the evening of the shooting. He described the altercation as a "one time thing." While at the bonfire on the night of the shooting, Defendant spoke with Jonathon Darbonne and apologized to Jonathon about the fight with his brother. According to Defendant, the two shook hands and Jonathon said that it was all right. After speaking to a few more people, Defendant went to his truck, sat down on the passenger side and lit a cigarette.

Next, Defendant testified that out of the corner of his eye, he saw five to six men approaching him. He recalled seeing Justin and Jonathon Darbonne, Roger Gurganus and a man who he originally thought was Jody Robinson, the victim. He was unsure of Jody Robinson's identity. According to Defendant, the group of men came around the side of his truck and he was hit twice in the head. Next, two of the men grabbed Defendant, pulled him from the truck and then they all began hitting him. Defendant was able to grab his gun that was laying on the seat while they were beating on him and he fired a shot into the air. Defendant stated that the fighting continued. After getting to his feet, he fired a second shot, but the fighting did not stop. Next, Defendant fell to the ground and he fired a third shot. At that time, the

-3-

men quit hitting him and he crawled through the bushes and took off running.

Defendant testified he was unaware that he had hit someone. Defendant denied aiming toward any of the men when he fired the gun and stated that he did not intend to strike anyone and was trying to retreat. Lastly, Defendant stated he never saw Jody Robinson that evening, that he did not know that he had shot in an area near Jody, nor did he aim his gun at anyone. Further, the investigators photographed the injuries to Defendant's face and the bloody T-shirt he was wearing that evening. According to Defendant, the injuries and bloody T-shirt were a result of the fight.

Three of the men that approached Defendant on the night of the shooting were called by the State to testify and their testimonies differed significantly from that of Defendant. First, Roger Gurganus testified he was at the river the night of the shooting and there were about fifty other people camping out that night. Roger added that he had been there since noon and was intoxicated at the time of the shooting. Prior to the shooting, Roger walked up to the Defendant, shook his hand and talked with him. Minutes later, Roger heard something about a fight so he, Justin Darbonne and Jonathon Darbonne walked up to the front of the Defendant's truck to see what was going on. Roger testified Defendant was sitting in his truck with the door open and when they were about fifteen feet away from the truck, Defendant exited the truck with a gun. According to Roger, there was no physical confrontation with Defendant, the men never got near Defendant and nothing was said to Defendant. Next, Defendant pointed the gun up in the air, fired a shot and said he did not want any trouble.

Meanwhile, Jody Robinson, the victim, went around the back of truck and was shot. Roger testified he did not see Jody get shot. Roger stated that after the shooting began, he blacked out and when he came to, he was beating up Defendant's truck.

Roger denied walking up to Defendant for the purpose of beating him up. He admitted he removed his shirt, but denied any intent to beat up Defendant.

Next, Justin Darbonne testified that he arrived at the river with his cousin, Jonathon Darbonne, around 5:00 to 6:00 p.m. He said Defendant was there at that time. Justin stated he was not intoxicated, claiming he was not a big drinker. Later on in the evening, Justin, along with Jonathon, Roger and John Lafleur, walked toward Defendant's truck. Justin stated Defendant was sitting in the truck on the passenger side with the door open. According to Justin, they did not exchange any words, none of them removed their shirts as they approached the Defendant's truck and there was no fighting with the Defendant. Suddenly, Defendant jumped out of his truck with a gun and said he did not want any "shit." Justin saw Defendant shove a clip into the gun and shift the chamber back to put a round in the gun. Then Defendant began waving the gun around, pointed the gun at Justin and then shot up into the air twice. Justin estimated they were about ten feet from Defendant's truck when he started firing. Justin did not see Defendant shoot the victim because he had run away and was hiding in the creek.

Additionally, Justin testified that Jonathon did not get along too well with Defendant. He admitted that there had been a previous fight between Jonathon and Defendant. Justin denied, however, going to Defendant's truck to engage in a fight. He explained they walked over so Jonathon could speak with the Defendant about why they were not getting along. Justin admitted, nonetheless, that if speaking with Defendant did not work, then he intended on fighting Defendant. Lastly, Justin stated that he did not see Jody as they were walking toward the truck.

Jonathon Darbonne testified that on the night of the shooting, Defendant called him over to speak to him. According to Jonathon, they spoke about the fight between

Defendant and Jonathon's brother, Chris, then Defendant apologized for same and they shook hands. Later, Jonathon walked toward Defendant's truck and several people were walking behind him. He took his shirt off as he was walking toward Defendant, but denied the intent to fight. Jonathon admitted, however, if Defendant had made him mad, he would have hit him. Jonathon also denied saying anything to Defendant as he approached him. Further, Jonathon denied hitting Defendant that evening and stated than none of the other men hit Defendant.

Jonathon testified when he was about fifteen feet away, Defendant cocked his gun and said he did not want any "shit." Next, Defendant shot the gun into the air two times. After the first shot, Jonathon ran into the woods. Jonathon stated he did not see Jody Robinson around at that time. When the third shot rang out, Jonathon stated he was well into the woods.

The victim, Jody Robinson, testified he knew Justin, Jonathon, Roger and John, but was not with the group when they approached the Defendant's truck prior to the shooting. Just before the first shot, Jody had left the area between the fire and the creek and was headed to Mr. O'Quinn's truck to retrieve a pen. As he was returning to the fire, Jody heard a female say something about a gun and he inquired about the location of same. Jody was directed to the area of Defendant and he proceeded to walk in that direction until he came upon Defendant.

As Jody first approached Defendant, Jody explained he had a glow stick in his pocket and was not hiding his position or trying to threaten Defendant. Instead, Jody was telling Defendant that a gun was not needed. Next, Jody watched as the Defendant fired a shot into the air. He was about ten feet from Defendant at that time. Jody stated he did not move prior to the shot or after the shot. Jody explained he looked over his right shoulder, then his left, noting that no one was coming around

him or from behind him. Before he could complete his next sentence, Defendant pointed the gun at Jody and fired a second shot. About ten seconds elapsed between the first and second shots. Jody's medical records reveal he sustained a gunshot wound to his right neck with an exit wound in the right suprascapular area, indicating that he was facing the Defendant when he was shot.

Brittany Henry, an eyewitness to the shooting, testified she was at the river the evening of the shooting, but was not intoxicated. Prior to the shooting, Brittany was at the campfire and left when she heard there was going to be a fight. Brittany saw Defendant sitting in his truck with the door open and saw Justin, Jonathon, Roger and John walk toward Defendant's truck. She stated Jody was not with the group. As the men were walking toward the truck, Roger and John removed their shirts and the men were talking about fighting Defendant. Next, Joey O'Quinn approached the men and Brittany heard him telling the men that the fight should be one on one.

As the men approached the truck, Brittany heard the men yelling at Defendant, saying that they were going to "kick his ass." Next, Brittany saw Defendant pull a gun out of the truck and fire a shot into the air when the men were ten to fifteen feet from the Defendant's truck. According to Brittany, there was no physical contact at all between the men prior to the shooting. After the first shot, the four men ran away and Brittany ducked behind Jarrett O'Quinn's truck.

When Brittany first saw Jody, he was approaching Defendant after the first shot was fired. She was not sure from where Jody had come. She testified Jody was trying to convince Defendant to put the gun away, talking as he was walking toward the truck. As Jody came close to him, Defendant took a step toward Jody, pointed the gun directly at him and fired a second shot. Then, Defendant took a step back and fired a third shot into the air and ran into the woods.

Detective Ben Perkins was called as a defense witness and testified when Defendant came in to give a statement around 5:00 a.m., he photographed the Defendant's face. Defendant had a swollen lip and a gash or mark around his left eye. Defendant reported to Detective Quirk that the injuries resulted from an altercation at the river with Justin, Jonathon and Roger. Although Defendant claimed he received his injuries from a fight with these men, Detective Perkins did not conclude a battery had been committed and none of the men were charged with battery. Defendant stated he was approached by these men and a fight ensued. Defendant also claimed the shots he fired were in self defense to get the men away from him and that he never intended to strike or hit anyone.

Detective Perkins also testified that during his investigation, Jonathon Darbonne and John Lafleur were charged with simple assault based on their statements that they verbally threatened the Defendant with bodily harm. Justin Darbonne and Roger Gurganus were charged with simple criminal damage to property in an amount in excess of $1,000.00 for which both men pled guilty.

The trial court did not find Defendant's testimony to be credible with regard to Defendant firing the gun three times before the men would stop beating him. The court found more credible the testimony that the men ran after the first shot. However, the trial court did believe that Defendant was scared of receiving a battery from the men when he pulled out his gun and fired the first round. Considering same, the trial court concluded as follows:

> So, from that point on the actions of Mr. Ordner were no longer reasonably and apparently necessary to prevent a battery. That had left. That threat was over, the boys were scattered. Yet Mr. Ordner discharged his weapon two more times and someone was shot. Mr. Ordner, who had been drinking himself made the choice to bring a loaded weapon to a party at midnight were there was little lighting and where there were at least twenty-five and as many as fifty young people present, many of whom had been drinking since daylight hours. It was

-8-

foreseeable that the discharge of the weapon, even shooting in the air could result in death or great bodily injury. So, consequently the Court finds beyond a reasonable doubt that Mr. Ordner is guilty of illegal discharge of a weapon.

Next, the trial court considered the evidence presented in support of the charge of aggravated battery. Based on the evidence presented, the court opined that Jody Robinson was not with the group of men. The court noted that only Defendant's testimony indicated that Jody might have been with the group of men who set out to harm him. However, Defendant's testimony contradicted itself in that he first testified he was not sure if he saw Jody with the group, and then later testified that he did not see Jody at all that evening. Also, the court observed there was no testimony by anyone placing Jody with the group of men that approached Defendant.

With regard to intent, the trial court held that intent can be inferred from the fact that Defendant aimed a loaded gun at Jody and fired at him as supported by the testimony of Jody Robinson and Brittany Henry. Further, the court noted that the direction of Jody's wound corroborates their testimony that the gun was leveled at Jody and fired. Although there were some inconsistencies, the court found the testimony of Ms. Henry was credible and corroborated by Jody Robinson, the Darbonnes and Roger Gurganus as well as the direction of the wound. Considering same, the trial court ultimately held Defendant was guilty of aggravated battery with a firearm.

The State was not required to show intent for the illegal use of a weapon. In lieu of intent, the State was required to show criminal negligence. As stated by the trial court, Defendant made the choice to bring a loaded gun to a late night party attended by several young people who had been drinking all day. Considering same, we find no error by the trial court in finding Defendant was criminally negligent in firing the gun, regardless of his intention, and it was foreseeable that the discharge

of the gun could have caused great bodily injury in this situation.

As to Defendant's conviction for aggravated battery, Defendant had the burden of proving self defense – that the use of the gun was justifiable to prevent a forcible offense against his person. First, the trial court concluded from the evidence presented that the group of men which were allegedly the aggressors had fled the scene after Defendant fired the first shot. It was a subsequent shot, either the second or third shot, which resulted in the harm to the victim. Once the aggressors ran from the scene following the first show, there was no longer a perceived threat of harm. There is no testimony or evidence which indicates that Jody Robinson was ever a threat to Defendant or that he approached Defendant in an aggressive manner when he arrived on the scene to convince Defendant to put the gun away. Thus, there was no justification for Defendant's action when he fired the gun a second and third time which resulted in the victim's injury. Accordingly, we will set aside the trial court's decision in the absence of manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

## ASSIGNMENT OF ERROR NO. 2

In his final assignment of error, Defendant argues the trial court erred in applying La.Code Crim.P. art. 893.3(D) in sentencing him, alleging he was never advised that it was being applied against him. The notice requirement for the imposition of sentence under La.Code Crim.P. art. 893.3 is provided for in Article 893.1, which reads:

> A. If the district attorney intends to move for imposition of sentence under the provisions of Article 893.3, he shall file a motion within a reasonable period of time prior to commencement of trial of the felony or specifically enumerated misdemeanor in which the firearm was used.

> B. The motion shall contain a plain, concise, and definite written statement of the essential facts constituting the basis for the motion and shall specify the provisions of this Chapter under which the district attorney intends to proceed.

First, as stated by Defendant, the bill of information indicates Defendant was charged under La.Code Crim.P. art. 893.3(E)(1)(a) which states:

Notwithstanding any other provision of law to the contrary, if the defendant commits a felony with a firearm as provided for in this Article, and the crime is considered a violent felony as defined in this Paragraph, the court shall impose a minimum term of imprisonment of ten years. In addition, if the firearm is discharged during the commission of such a violent felony, the court shall impose a minimum term of imprisonment of twenty years.

A violent felony is defined in La.Code Crim.P. art. 893.3(E)(1)(b) as " . . . second degree sexual battery, aggravated burglary, carjacking, armed robbery, second degree kidnapping, manslaughter, or forcible rape."

On August 25, 2005, the State filed notice of its intent to seek enhancement of sentence under Article 893.3. The State requested Defendant be sentenced under the provision of Article 893.3, in general, but did not indicate a specific subsection. Next, Defendant filed a motion in limine and objection to the State's intent to seek enhancement of his sentence. Defendant's objection to the enhancement was based on a claim of double jeopardy, not the argument made herein. As noted by the State, Defendant did not refer to a specific subsection in making his argument.

Upon consideration of the parties' briefs, the trial court concluded Article 893.3 applied to the charge of aggravated battery, but not to illegal use of weapons. In its written opinion and ruling, the trial court does not refer to a specific subsection of Article 893.3. Also, the trial court found that proper notice notifying Defendant of the State's intent to seek enhancement of sentence in accordance with Article 893.3 had been made.

At sentencing, the trial court noted once more there had been notification of the State's intent to seek enhancement of Defendant's sentence under Article 893.3. Later, Defendant objected to the enhancement of his sentence under 893.3(E)(1)(a),

as set forth in the bill of information and argued that it did not apply to the instant case because the conviction did not fit any of the "violent felonies as defined in subsection E. Considering same, Defendant argued he had not been given proper notice of which enhancement was going to be used, and thus, the enhancement could not be used against him.

The State argued the general wording of its notice gave adequate and specific notice that it would seek enhancement due to the use of a firearm during the commission of a violent felony and the trial court agreed. In reaching its conclusion, the trial court took note of the incorrect subsection in the bill of information, but also noted that the State had filed a separate notice stating that Article 893.3 was going to be used. The court found the State's notice provided the specific facts containing the basis of the motion and that the facts fit under the appropriate subsection.

Thus, we conclude the State's notice was adequate. Although the bill of information incorrectly states the applicable subpart of Article 893.3, the State's notice was general and encompassed all the subsections. Defendant was not surprised at sentencing by the State's intent to enhance his sentence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent involving the sentence imposed and one error in the minutes of sentencing.

First, the trial court erroneously denied Defendant eligibility for diminution of sentence for aggravated battery. Prior to imposing Defendant's sentences, the judge stated, "And finally 15:571.3(C)(d), says the defendant is not eligible for diminution of sentence for the crime of aggravated battery." When imposing the Defendant's sentence for aggravated battery, the judge stated, "On the charge [of aggravated

battery] you are not eligible for diminution of sentence in accordance with 15:571.3(C)(1)(d)."[1]

Louisiana Code of Criminal Procedure Article 894.1(D)(1) requires the trial court to advise Defendant, immediately following the imposition of a felony sentence, "[w]hether, pursuant to the provisions of R.S. 15:571.3, the offender's sentence is subject to diminution for good behavior." Louisiana Code of Criminal Procedure Article 894.1(D)(2) also requires a trial court to advise Defendant whether the sentence was "enhanced pursuant to R.S. 15:529.1 et seq., Article 893.3, or any other relevant provision of law." It does not appear from the court's statements that it complied with La.Code Crim.P. art. 894.1's requirement. Around the time of the trial court's statement regarding diminution ineligibility, there was no advisement regarding enhancement.

The trial court's statement was not merely an advisement, but was an actual denial of eligibility for diminution of sentence. *See State v. Davis*, 05-543 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, *writ denied*, 06-587 (La.10/13/06), __ So.2d __, wherein this court found the trial court's statement, "you're not eligible for diminution of sentence, for good time under Louisiana Revised Statute 15:571.3C because you have been convicted one or more times of violations of the Louisiana Controlled Dangerous Substances Law, which are felonies," was an actual denial of diminution eligibility rather than an advisement of such eligibility. This court amended that defendant's sentence to delete the statement denying diminution of sentence.

In *State v. Narcisse*, 97-3161, p. 1 (La. 6/26/98), 714 So.2d 698, 699, the

---

[1] Later in the proceeding, after the judge had imposed the sentences, she was asked to clarify her reference to La.Code Crim.P. art. 893.3. In doing so, she stated, "As far as the other mentions, that was simply to say where I got no suspension. Those are all legislatively mandated, no parole and that there is no diminution of sentence for that charge."

supreme court stated the following regarding a trial court's authority to deny eligibility for diminution of sentence:

> [A] trial judge lacks authority under La.R.S. 15:573.1(C) to deny a defendant eligibility for good time credits against his sentence, because that statute is "directed to the Department of Corrections exclusively." *State ex rel. Simmons v. Stalder*, 93-1852 (La. 1/6/96), 666 So.2d 661. Moreover, even the Department of Corrections lacks that authority under La.R.S. 15:571.3(C) in a case in which the trial court has not formally adjudicated and sentenced the defendant as a multiple offender under the provisions of La.R.S. 15:529.1. When the sentencing court is of the opinion that a denial of diminution of sentence is warranted under the specific circumstances of the case, the trial judge's discretion should be exercised under La.C.Cr.P. 890.1(B).

*Id.* at 699. *See also State v. Hotard,* 04-1092 (La. 10/15/04), 885 So.2d 533.

Louisiana Code of Criminal Procedure Article 890.1 states:

> A. When the court imposes a sentence, the court shall designate whether the crime involved is a crime of violence or an attempted crime of violence as defined or enumerated in R.S. 14:2(13).

> B. Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined or enumerated in R.S. 14:2(13) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D).

Although the offense involved in the present case is enumerated as a crime of violence in La.R.S. 14:2(13), the trial court made no indication that the offense was considered a crime of violence. Thus, the trial court was not exercising its authority to deny diminution eligibility under La.Code Crim.P. art. 890.1. The trial court's statement regarding diminution eligibility was not an advisement in compliance with La.Code Crim.P. art. 894.1(D). Accordingly, the trial court's statement regarding diminution was improper and Defendant's sentence for aggravated battery should be amended to delete the denial of diminution eligibility. The case is remanded and the

district court instructed to make the necessary corrections in the minutes.[2]

Lastly, the minutes of sentencing are in need of correction. The minutes state, "THE COURT SENTENCES THE DEFENDANT AS FOLLOWS: ILLEGAL USE OF WEAPON /2 YEARS AT HARD LABOR WITH THE DEPARTMENT OF CORRECTIONS WITH THE BENEFIT OF DEPRICATION OF TIME." The transcript indicates that after the judge imposed the two year sentence, she stated, "Diminution of sentence for good behavior shall be earned. . . ." Thus, the trial court should be instructed to amend the minutes of sentencing to indicate Defendant's sentence for illegal use of a weapon is "with the benefit of diminution of sentence" rather than "with the benefit of deprication of time."

## DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed. However, Defendant's sentence for aggravated battery is amended to delete the denial of diminution eligibility. The case is remanded and the district court instructed to make the necessary corrections in the minutes. Additionally, the trial court is instructed to amend the minutes of sentencing to indicate Defendant's sentence for illegal use of a weapon is "with the benefit of diminution of sentence" rather than "with the benefit of deprication of time."

**AFFIRMED, AS AMENDED AND REMANDED.**

---

[2] Because this issue is being discussed in an error patent review, we have not reviewed whether the trial court's advice is correct as to Defendant's ineligibility in accordance with La.R.S. 15:571.3. In other words, we have not determined whether Defendant is, in fact, ineligible for diminution of sentence under La.R.S. 15:571.3.