STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-396

STATE OF LOUISIANA

VERSUS

CHRISTOPHER BRYAN CHENEVERT

****************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 295,521
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

****************

JAMES T. GENOVESE
JUDGE

****************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

CONVICTION REVERSED; SENTENCE VACATED
AND SET ASIDE; ACQUITTAL ENTERED.

Carey J. Ellis, III
Louisiana Appellate Project
Post Office Box 719
Rayville, LA 71269-0719
(318) 728-2043
COUNSEL FOR DEFENDANT/APPELLANT:
    Christopher Bryan Chenevert

**James C. "Jam" Downs**
**District Attorney – Ninth Judicial District**
**Monique Y. Metoyer, Assistant District Attorney**
**Post Office Drawer 1472**
**Alexandria, LA 71309-1472**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Christopher Bryan Chenevert, appeals his conviction of illegal use of a weapon, alleging insufficiency of the evidence. For the following reasons, we reverse his conviction, vacate and set aside his sentence, and enter an order of acquittal.

## FACTS AND PROCEDURAL HISTORY

On January 10, 2009, at about 3:00 a.m., Defendant fired his pistol several times while standing outside on his porch. Defendant's elderly neighbor became frightened and reported the gunshots; Defendant was arrested soon thereafter. Defendant was charged by bill of information with illegal use of a weapon, a violation of La.R.S. 14:94. Following a trial by jury, Defendant was found guilty as charged. He subsequently filed a motion for post verdict judgment of acquittal, which was denied. Defendant was sentenced to serve two years at hard labor, suspended, and placed on supervised probation for three years with general and special conditions of probation. He was also ordered to pay a fine of $500.00, plus court costs.

Defendant has appealed his conviction. He is now before this court on appeal, asserting that the evidence was insufficient to convict him of illegal use of a weapon.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant argues that the evidence presented was insufficient to support the verdict of illegal use of a weapon. The analysis for a claim of insufficient evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*,

393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Illegal use of a weapon is defined in La.R.S. 14:94(A) as "the intentional or criminally negligent discharging of any firearm . . . where it is foreseeable that it may result in death or great bodily harm to a human being." In the instant case, Defendant contends that it was not foreseeable that the shots fired by him would cause or result in death or great bodily harm to another.

At trial, Sergeant Brian Phillips of the Rapides Parish Sheriff's Office testified that on January 10, 2009, he was dispatched to 1524 Hickory Hill Road, Pineville, Louisiana, between 3:00 and 3:30 a.m., to investigate reports of shots being fired. When he started checking the area, he noticed only one house with lights on. Sergeant Phillips pulled into the driveway and approached the residence. As he started up the steps, he saw empty shell casings scattered about the porch. Sergeant Phillips then returned to his truck to take cover while waiting for backup. When Deputy Eddie Andrus arrived, they approached the house and knocked several times until Defendant eventually opened the door. Defendant was asked to step outside; he was then handcuffed and given his *Miranda* warning.

Sergeant Phillips told Defendant about the reported gunfire, and Defendant admitted that he had fired his gun. When asked why he had fired his weapon, Defendant reported that he was depressed and wanted to shoot his newly acquired gun. Defendant indicated that he had been shooting at a tree between his home and

the woods, but officers were unable to find any marks on the tree. When Defendant was told there were no marks on the tree, he then stated he "just shot around," without specifically identifying the area at which he aimed his gun.

According to Sergeant Phillips, the shell casings that were recovered were found scattered in different places on the front porch and on the ground. Based on his eight years of experience as a firearms instructor, Sergeant Phillips opined that the locations of the shell casings were not consistent with shooting in one position. He explained that if the weapon was fired from a single location, the shell casings would have been ejected in a general area, not scattered around the area. Seven empty shell casings were collected.

Sergeant Phillips did not check beyond the tree for evidence of shots fired because it was dark and the woods were thirty to forty yards behind Defendant's home. A residence was located on one side of Defendant's house, about one hundred feet away, and was occupied by an elderly woman, seventy-five to eighty years of age. Sergeant Phillips spoke to Defendant's neighbor, who was scared as a result of shots being fired. Additionally, Sergeant Phillips noted a residence located directly across the street from Defendant's house and two to three more residences going up the street. Lastly, Sergeant Phillips testified that Defendant appeared to have been drinking and admitted to same.

A video created by Defendant depicting the area around his house where he discharged his weapon was jointly submitted into evidence and played for the jury during the testimony of Sergeant Phillips. Defendant's home, as portrayed in the video, appeared to be in a rural area, with the home positioned perpendicular to the road. One end of the home faces the woods, and the other end faces the road. Two residences can be seen from Defendant's porch, one on the property adjacent to his

3

porch and one directly across the street. Neither residence, however, is located between Defendant's home and the tree and woods where he claims to have been aiming.

The majority of the video depicts a wooded area off the right end of the porch, the area where Defendant maintains he discharged his weapon. At least two large trees can be seen in the area before reaching the woods. On the video, Defendant measured the distance between the home and where the woods began. He concluded that the house was sixty-two yards from the woods. In the video, the woods appear thick, with no signs of residences or businesses in the wooded area.

While the video was playing for the jury, Sergeant Phillips directed the jury's attention to the tree which Defendant initially stated was the target of his gunfire. Sergeant Phillips testified that he did not tour the wooded area where Defendant stated he had fired his weapon.

On cross examination, Sergeant Phillips testified that he did not have any physical evidence to indicate that Defendant shot in any direction other than the woods. He did not find nor was he shown any bullet holes in the neighbor's house or the house across the street. Also, Sergeant Phillips did not walk any distance into the woods and could not tell if there was heavy, dense vegetation.

Deputy Eddie Andrus of the Rapides Parish Sheriff's Office testified that he was also dispatched that evening to investigate a report of shots having been fired. He arrived after Sergeant Phillips. Deputy Andrus also observed shell casings on Defendant's porch. When Defendant was asked about the reported shots being fired, he admitted shooting his pistol at a tree located just out from his porch. Deputy Andrus also looked at the tree and could not find any bullet holes or nicks that would indicate that it had been struck by a bullet. Defendant was again asked where he had

4

shot his weapon, and he replied that he did not know.

According to Deputy Andrus, Defendant was extremely intoxicated as evidenced by his slurred speech, unsteady balance, and a strong odor of alcoholic beverage on his breath. Although Defendant never indicated that he had been shooting toward the wooded area, Deputy Andrus clarified that the tree at which Defendant allegedly aimed was located in the direction of the woods. Deputy Andrus stated that he could barely see the tree, however.

On cross examination, Deputy Andrus testified that the deputies briefly looked at the neighbor's house using flashlights, but did not see anything. To his knowledge, none of Defendant's neighbors reported bullet holes in their homes.

Defendant's neighbor, Angela Lasyone, testified that she lived next door to Defendant. Mrs. Lasyone would often hear gunshots coming from the woods located behind her home and assumed that the shots were from hunters; however, she had never actually seen anyone in the woods.

Mrs. Lasyone's husband, Odyest Earl Lasyone, testified that he had seen people in the woods behind his residence, the same woods that are behind Defendant's home. He had seen squirrel and deer hunters in the woods as well as deer stands; however, he had never seen anyone hunting in the woods at 3:00 a.m. According to Mr. Lasyone, it was not unusual to hear firearms being discharged in the area. Lastly, Mr. Lasyone testified that his residence had never been struck by a bullet, nor was he aware of any bullet striking a structure in the neighborhood.

Lastly, Defendant took the stand and denied firing his weapon in the direction of his neighbor's house. He maintained that he had not been drinking to the extent that he was unaware of what he was doing. Defendant testified that he had had about four, eight-ounce toddies of Jack Daniels mixed with Sprite and admitted that he used

5

to drink excessively on a frequent basis. He disagreed with the officers' testimony that his balance was unsteady. With regard to his speech, however, Defendant maintained that his speech is usually slurred, but his eyes are not typically bloodshot.

Additionally, Defendant maintained that the tree at which he was shooting was located in the center of his property, not between his and his neighbors' properties. Defendant's video and the testimony of Sergeant Phillips confirm this assertion. Defendant also testified that when he told the officers that he was shooting around, he meant that he was shooting around the general area of the tree. Although it was dark, Defendant contended that he was able to see where he was aiming because his eyes were adjusted to the darkness and because he knew what was in his back yard.

Defendant agreed that it was disrespectful to his neighbor to discharge his gun at 3:00 a.m. He maintained, however, that it was not dangerous because he knew where he was aiming his weapon. Defendant added that the shell casings were scattered about his porch because they ricocheted off the roof of the porch when he fired his weapon. Lastly, Defendant stated that he was intoxicated, but knew where he had fired his gun.

This court was recently faced with a similar scenario in *State v. Cain*, 09-390 (La.App. 3 Cir. 11/4/09), 21 So.3d 1104, *writ denied*, 09-2659 (La. 6/18/10), 38 So.3d 320. In *Cain*, the intoxicated defendant fired a shot in the air on his rural property. An occupied residence was located about eight hundred yards from where the defendant fired his weapon. On appeal, this court concluded that the record was void of evidence that one could foresee that the defendant's actions could result in death or great bodily harm. There was no one else around, and, although the defendant was facing the nearby residence, he fired straight up in the air, not in the direction of the residence. Also, there was no evidence that the defendant pointed the

6

weapon at anyone or anything.  Lastly, the defendant lived on the back five acres of the jointly-owned property that consisted of many acres.  There were trees on the property, and the defendant and the occupants of the nearby house were the only residents on the property.  As such, the court concluded that the likelihood that the bullet the defendant fired in the air would hit anyone was negligible and unlikely to cause bodily harm or death.

Additionally, in *Cain*, 21 So.3d at 1108-09, this court discussed two other opinions in reaching its decision as follows:

> In *State v. Powell*, 95-424 (La.App. 3 Cir. 11/2/95), 664 So.2d 608, this court was faced with a similar situation.  The defendant was charged under La.R.S. 14:94(E), which amongst other elements, the State had to prove that considering the time and place, it was foreseeable that death or great bodily harm might occur to another person.  In *Powell*, the defendant drove by a residence and fired three to four shots from a .25 semi-automatic pistol.  At the time the pistol was fired, four adults and a few children were in and around the front yard of the residence.  The shots, however, were aimed in a direction opposite that of the residence, and, thus, the court concluded that it was not foreseeable that death or great bodily harm might occur.
>
> In *State v. Ordner*, 06-1054 (La.App. 3 Cir. 2/14/07), 951 So.2d 508, *writ denied*, 07-587 (La.10/26/07), 966 So.2d 572, however, this court held it was foreseeable that discharge of a weapon, including shooting in the air, could result in death or great bodily harm.  The defendant in *Ordner* was charged with illegal use of weapons and aggravated battery.  On the evening in question, the defendant went to a party on a river where at least twenty-five to fifty young people were in attendance.  The defendant had been drinking and brought a loaded gun to the party.  Not long after his arrival, the defendant was approached by four men.  In an attempt to stop a physical altercation, the defendant fired a shot in the air and the men took off running.  The defendant, however, fired his gun two more times, even though the threat was over, striking and injuring a man who was trying to convince the defendant to put his weapon away and was never shown to have been a threat to the defendant.  The court also observed that the State was required to show criminal negligence, not intent, for the illegal use of a weapon, and found the defendant was criminally negligent in firing the gun, regardless of his intention.
>
> Like the defendant in *Ordner*, the Defendant was intoxicated, by his own admission, when he fired his weapon.  However, unlike in

7

*Ordner*, where the defendant there brought a loaded weapon to a party, Defendant in this case was on his own property, alone. Further, Defendant fired his gun only once and immediately cooperated with Deputy Paul after ascertaining he was a police officer. Ordner, after initially firing his gun once to stop an altercation, continued to fire his gun several more times after the threat was over. Therefore, the *Ordner* case is factually distinguishable from the facts presented here.

Considering this court's rulings in *Cain*, *Powell* and *Ordner*, we find that the State failed to meet its burden of proof beyond a reasonable doubt that it was foreseeable that the shots fired by Defendant could have resulted in death or great bodily harm as required by La.R.S. 14:94. There was no testimony or physical evidence to prove that Defendant fired his weapon in the direction of any of the nearby residences. Additionally, other than scattered bullet casings on Defendant's porch, there was no evidence to challenge Defendant's testimony that he fired his weapon toward the trees and wooded area just off the end of his porch. Lastly, Defendant fired his weapon at a time when it was highly unlikely that a neighbor would be outside and in danger of being struck by a bullet. Accordingly, even viewing the evidence in the light most favorable to the prosecution, we find the evidence insufficient to convict Defendant of illegal use of a firearm.

### DISPOSITION

Defendant's conviction of illegal use of a firearm is reversed, his sentence imposed on that conviction is vacated and set aside, and an order of acquittal is entered.

**CONVICTION REVERSED; SENTENCE VACATED AND SET ASIDE; ACQUITTAL ENTERED.**

8