# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1181

**STATE OF LOUISIANA**

**VERSUS**

**GLYNDALE ARCENEAUX**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 136485
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED.**

**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**15th Judicial District**
**Post Office Box 3306**
**Lafayette, Louisiana  70511**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Glyndale Arceneaux**

**Glyndale Arceneaux**
**Post Office Box 26**
**St. Gabriel, Louisiana  70776**
**APPELLANT:**
     **Glyndale Arceneaux**

**CONERY, Judge.**

On April 12, 2012, Defendant, Glyndale Arceneaux, was charged by bill of information with one count of armed robbery, in violation of La.R.S. 14:64 and one count of attempted armed robbery, in violation of La.R.S. 14:27 and La.R.S. 14:64. On May 9, 2012, Defendant entered a written plea of not guilty.

On March 18, 2014, the morning of trial, the State filed an amended bill of information, changing the second charge from attempted armed robbery to armed robbery, in violation of La.R.S. 14:64. The State also severed the two charges, proceeding to trial only on armed robbery, the second count of the bill. Defendant entered a verbal plea of not guilty.

On March 19, 2014, the jury returned a verdict of guilty as charged. On June 26, 2014, Defendant was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. On July 7, 2014, Defendant filed a motion to reconsider sentence alleging that the sentence was excessive, which was denied. Defendant has timely appealed, alleging errors in jury selection, insufficiency of the evidence, and excessive sentence. We find no errors in jury selection. The evidence was sufficient to prove Defendant's identity as the perpetrator of the robbery, and the sentence imposed was not excessive. We affirm Defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On the first day of trial, Defendant plead not guilty to the amended bill of information. During voir dire, Defendant's attorney asked if anyone believed that an innocent defendant should be required to take the stand to declare their innocence. Potential jurors Marcus Richard, Mary Miley, and Deborah Gooch all stated that they felt someone who was innocent should testify.

The trial court subsequently attempted to rehabilitate the potential jurors by making it clear that a defendant has the right not to take the stand, asking whether or not anyone would hold a decision not to testify against Defendant, and instructing the potential jurors that they would not be allowed to take Defendant's decision not to testify into consideration. Defense counsel subsequently challenged Mr. Richard, Ms. Miley, and Mrs. Gooch for cause, claiming that neither Mr. Richard nor Ms. Miley answered the trial court's questions.

The trial court denied the challenges for cause, stating that "[n]o one indicated that they would not follow the law as presented to them." Defense counsel subsequently used peremptory challenges to remove Mrs. Gooch and Mr. Richard.[1] After a second panel of jurors was questioned, the State chose to backstrike Ms. Miley.

Thereafter, the State called its first witness, Ms. Danielle Foreman, who testified that she was the teller manager of the Capital One bank on September 17, 2009. She testified that she was approached by a woman wearing a mask, sunglasses, and a baseball cap. Ms. Foreman testified as to what dye-packs[2] and bait lists[3] are, and how they are part of the bank's protocol during a robbery. She also testified that the bank most commonly uses red and blue dye packs.

Ms. Foreman stated that while there was a gun in her face, she loaded all of the money that was in her top drawer into a bag for the robber, along with her dye-

---

[1] Although the minutes reflect that Mr. Richard and Mrs. Gooch were excused by the defense, the transcript contains no mention of those two jurors being removed by peremptory challenge, although they are not amongst the jurors asked to remain.

[2] A dye pack is a radio-controlled incendiary device used by banks to permanently mark stolen cash.

[3] A bait list is essentially a list of the serial numbers on certain bills, which are kept in each drawer, so that they can easily be traced in the event of a robbery.

pack. She also testified that once she gave the bag back to the robber, the individual moved to the next teller, Ms. Patty Allemond, and stuck the gun in Ms. Allemond's face. Ms. Foreman noted that the gun was a small black handgun. On cross-examination, Ms. Foreman stated that she could not determine the caliber of the gun, nor could she identify Defendant as the individual who robbed her.

Next, the State called Ms. Patty Allemond, who testified that at 3:00 p.m., while waiting on a customer, she noticed that Ms. Foreman had a customer, and upon noticing that the customer had her face hidden, Ms. Allemond hit the panic button. She further testified that the robber pushed her customer, Mr. Joe Daphine, out of the way and pointed a black gun at her, and that she placed bait money and her dye-pack in the bag before giving it back to the robber.

On cross-examination, Ms. Allemond testified that she could not identify the caliber of the weapon used. When asked if she could identify Defendant as the person who robbed her, or whether Defendant was the person who held the gun on her, she responded "I'm pretty sure it is." Ms. Allemond testified that the robber's mask dropped some, and she remembered waiting on Defendant from a prior encounter. Ms. Allemond testified that she was unable to identify Defendant by name to the police on the day of the robbery. Likewise, she was unable to identify any features which might have led law enforcement to the Defendant, as Defendant was just a regular customer at the bank. She was clear, however, that when Defendant's mask dropped, she recognized Defendant as a prior customer, and she was able to identify Defendant at trial as the robber.

The State then called Ms. Cheryl Anthony, another Capital One employee, who testified that while returning to her station shortly before the robbery, she saw a customer approaching Ms. Foreman's station, while Mr. Joe Daphine was at Ms.

3

Allemond's station. Thereafter, the customer that had been at Ms. Foreman's station went over to Ms. Allemond's station. That customer left, and Mr. Daphine was still standing near Ms. Allemond's station. Soon thereafter, Ms. Anthony was informed that the bank had been robbed by the customer she had observed.

The State then called Mr. Joseph Daphine, who testified that while he was at Ms. Allemond's station, the robber pushed him out of the way. He saw a weapon that "[he] just kind of knew it was a gun."

The State's final witness on the first day of trial was Mr. Kevin Hudson, the branch manager at the time of the robbery. Although he was not at the bank during the robbery, Mr. Hudson testified that he returned to the bank immediately after the robbery, was in charge of securing the bank during the investigation, and oversaw the preparation of Capital One's post-robbery security report.

Mr. Hudson then testified that Capital One had video surveillance and that he obtained from their corporate office the video from the time of the robbery and subsequently gave a copy of the video to Detective Landry. The video surveillance footage was shown to the jury, and then court was recessed for the day.

Trial resumed on March 19, 2014. The State called Corporal Jeff Suire with the Lafayette Police Department. Corporal Suire testified that he responded to an armed robbery in progress call, that he took pictures inside the bank, and that he processed the note that had been left behind by Defendant. Corporal Suire stated that he was not able to obtain any finger prints off of the note.

The State next called Sergeant Terrance Olivier of the Lafayette Police Department. Sergeant Olivier testified that at the time of the robbery, he was a crime scene technician and that upon his arrival, he met with the detective in charge, viewed the security footage and processed the crime scene. He identified

State's Exhibit Number Three as the note he recovered from the crime scene that was given to one of the tellers by the robber, which read "All money in bag or die." Sergeant Olivier also testified that he was unable to obtain any prints from the note.

On cross-examination, Sergeant Olivier confirmed there were no identifying forensics which connected the note to Defendant. On re-direct however, Sergeant Olivier noted that you would not expect to find any fingerprints when someone is wearing gloves.

The State next called Chris Cogburn of the Lafayette Sheriff's Office, who was a metro crime scene detective at the time of the robbery. Mr. Cogburn testified that he obtained a search warrant for and processed a vehicle as part of the investigation and that he copied the original surveillance DVD for Detective Landry.

Mr. Cogburn further testified that pursuant to said search warrant, he recovered a paper towel and a $100 bill which appeared to have dye stains on them from Defendant's car. The items were found between the driver's seat and the car's center console. He also identified State's Exhibit Number Five, a pair of sunglasses recovered from the glove compartment of Defendant's vehicle. He noted that Detective Landry had requested they collect the glasses as possibly being worn during the robbery. On cross-examination, Mr. Cogburn testified that he turned over the sunglasses to the Lafayette Police Department Evidence Custodian and had no knowledge of any tests being performed on the sunglasses.

The State then called Deputy Troy Romero of the Lafayette Sheriff's Office. Deputy Romero testified that he came into possession of a $10 bill that had red dye on it similar to the dye packs from the bank. The $10 bill had been recovered from

5

a bingo hall. The evidence showed that Defendant had attempted to use the bill at the bingo hall and that Deputy Romero took immediate possession of the $10 bill when Defendant tried to use it to pay for bingo games. Deputy Romero also testified that Defendant willingly provided him with her ID upon request. He further testified that Defendant claimed that she found the $10 bill she paid to the bingo hall at a gas station.

On cross-examination, Deputy Romero testified that at the time he came into contact with Defendant, he did not consider her a suspect, that she cooperated willingly, and that he felt she was being truthful.

The State next called Detective Brad Robin of the Lafayette Police Department, who testified that he executed a search warrant at Defendant's residence. Detective Robin testified that during the search, deputies recovered a Nike hat, a BB gun, and three pairs of slippers.

The State's next witness was Detective Glenn Landry of the Lafayette Police Department, who testified he was the lead detective on the case. Detective Landry identified a number of still photos taken from the Capital One video surveillance, depicting the robber's attire, which was similar to some of the items recovered in the search warrant.

Detective Landry testified that he received information that led to his viewing the surveillance video of a nearby business, which in turn led him to the determination that a silver four-door car with a sun roof may have been involved in a robbery as a "get away" vehicle. Detective Landry then testified that he used a database to determine that Defendant owned a four-door silver Hyundai. He then drove by Defendant's home and observed that the car had a sun roof. Detective

Landry then testified that he obtained search warrants for Defendant's home and vehicle.

On cross-examination, Detective Landry stated that while the sunglasses had distinctive markings, there was nothing distinctive about any of the slippers recovered from Defendant's home, nor could he identify the footwear worn by the robber from surveillance footage. He also agreed with defense counsel that the cap recovered was non-distinct and common.

The State next called Mr. Kevin Ardoin, the lab director for the Acadiana Crime Lab. Mr. Ardoin testified regarding the chain of custody of the paper towel and $100 bill that were recovered from Defendant's car. He then discussed the procedure used to test them and the crime lab's finding that both items had dye-pack dye on them. On cross-examination, he confirmed that none of the other items recovered from Defendant's home or vehicle were tested by the crime lab.

The State then called Ms. Trina Cross, Capital One's Assistant Branch Manager at the time of the robbery. Ms. Cross testified as to the previously-referenced State's Exhibit Number Nineteen, verifying the exhibit as the bait list from the day of the robbery. The State then brought back Detective Landry to verify that the $100 bill recovered from Defendant's car was part of the bait money stolen during the robbery. At that time, the State rested its case.

Defendant then called her only witness, Mr. Gene Edwards, a retired member of the Lafayette Sheriff's Office, who was Defendant's neighbor. Mr. Edwards testified that on the day of and at the time of the robbery, he was mowing his grass and spoke to Defendant as she was going to meet her son's school bus. He further testified that he saw her return to the house with her son. While Mr. Edwards testified that his memory is in good condition, his testimony regarding the

child's age at the time of the incident and the child's age as of the date of testifying was similar. Mr. Edwards testified that he simply did not keep up with the child's age. Mr. Edwards' testimony that he saw Defendant on the date and time of the robbery was given on March 19, 2014, almost five years after the robbery in question.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

On appeal, Defendant asserts the following three assignments of error:

1. The trial court erred in denying defense counsel's challenges for cause regarding prospective jurors Gooch, Richard, and Miley.

2. The trial court erred in finding Ms. Arceneaux guilty of armed robbery.

3. The trial court erred in imposing an excessive sentence.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant's first assignment of error contends that during *voir dire*, three potential jurors provided answers which indicated that, should Defendant exercise her Constitutional right not to testify, they would hold it against her. Those jurors were Mr. Marcus Richard, Ms. Mary Miley, and Mrs. Deborah Gooch.

> Prejudice is presumed when a challenge for cause is denied erroneously by the trial judge and the defendant has exhausted all of his peremptory challenges. In order for a defendant to prove reversible error warranting reversal of both [her] conviction and sentence, [s]he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all [her] peremptory challenges.

*State v. Hart*, 96-697, p. 7 (La. 3/7/97), 691 So.2d 651, 656 (citations omitted).

8

Defendant contends that her challenges for cause were erroneously denied, that she was forced to use peremptory challenges to remove all three potential jurors, and that she used all of her peremptory challenges. The *voir dire* transcript directly conflicts with Defendant's claim with regards to Ms. Miley and does not support Defendant's claims with regards to Mr. Richard or Mrs. Gooch.

The transcript clearly shows that Ms. Miley was initially accepted by both Defendant and the State. Ultimately, Ms. Miley did not serve on the jury, as the State chose to backstrike her after examining the second panel of prospective jurors. Thus, Ms. Miley was removed from the jury without Defendant's having to use a peremptory challenge. Therefore, Defendant suffered no prejudice from the denial of the challenge for cause, and her assignment of error with respect to Ms. Miley is without merit.

As stated in *Hart*, Defendant must prove that she has used all of her peremptory challenges before she can claim prejudice based on a failure to grant her peremptory challenges. In this case, the Defendant has failed to prove that she used all of her peremptory challenges. While the court minutes reflect that Defendant used all twelve of her peremptory challenges, careful review of the transcript only proves the use of seven of Defendant's peremptory challenges. When the court minutes conflict with the transcript, the transcript prevails. *See State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Thus, Defendant has failed to meet her burden under *Hart*, and thus, has failed to prove prejudice. This assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER TWO**

In her second assignment of error, Defendant contends the evidence was insufficient to support her conviction. The analysis for such claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

> To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; *State v. Jeselink*, 35, 189[, pp. 7-8] (La.App. 2d Cir. 11/2/01), 799 So.2d 684[, 690].

*State v. McGinnis*, 07-1419, p. 11 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 890 (quoting *State v. Ellis*, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, *writ denied*, 07-2190 (La. 4/4/08) 978 So.2d 325).

Although Defendant has alleged that the evidence was insufficient to support her conviction, her argument is based solely on issues of identification. Because Defendant has failed to allege insufficiency with regard to any of the elements of armed robbery, we found no additional sufficiency issues and will only address Defendant's issues with identification.

Our law requires the State "to negate any reasonable probability of misidentification" when a key issue in a case is the defendant's identity. *State v. Hughes*, 05-992, p. 5 (La. 11/29/06), 943 So.2d 1047, 1051. However, "[p]ositive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations." *Id.* (Citations omitted).

In the case *sub judice*, there were multiple witnesses to the robbery. However, most could not identify the perpetrator. The first victim, Ms. Danielle Foreman, testified that she could not identify Defendant as the perpetrator because the robber was wearing a hat, sunglasses, and mask. Likewise, Mr. Joseph Daphine, who was pushed out of the way by the robber, could not identify the individual.

The second victim, Ms. Patty Allemond, was the only witness to place Defendant at the bank during the robbery, stating that she was "pretty sure" that Defendant was the person who held a gun on her. Although she admitted to being unable to identify Defendant by name at the time of the robbery, Ms. Allemond stated that "whatever she had on her face dropped." As a result, she testified at trial that she recognized Defendant as someone on whom she had previously waited.

In contrast, Mr. Gene Edwards, Defendant's neighbor, testified that at the time of the robbery, he was having a conversation with Defendant, saw her walk to meet her son's school bus, and then saw the two of them walk back. Mr. Edwards' testimony that he saw Defendant on the date of the robbery came almost five years after the robbery at trial. There were no contemporaneous notes of Mr. Edwards' recollections on the date of the robbery, nor was there a previous statement to that

11

effect given at or in close proximity to the time of the robbery introduced to corroborate Mr. Edwards' testimony.

The factfinder's role is to weigh the credibility of witnesses. *See Kennerson*, 695 So.2d 1367. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second guess the credibility determinations of the triers of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1371. Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. [120], [134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

Given the jury's verdict, it appears the trier of fact found Ms. Allemond a more credible witness than Mr. Edwards. The repetitive and mundane act of retrieving a child from the bus is not something that would stick out in a person's memory, while the events of bank robbery would not be an event that a person would likely forget.

12

The remaining evidence presented to identify Defendant was circumstantial. The State recovered a single $100 bill from Defendant's car which was part of the bank's bait money, and was confirmed by the crime lab to have dye on it from the bank's dye packs. The State also presented a pair of sunglasses from Defendant's car, a $10 bill with dye on it used by Defendant at a bingo hall, a BB gun, a generic black and white Nike baseball cap, plus multiple pairs of slippers, which could not be directly tied to the robbery, all recovered from Defendant's residence. A similar cap, sunglasses, and slippers were depicted on the video of the robbery, as was the description of Defendant's car on video surveillance as a silver sedan with a sunroof.

Following the *Jackson*, 443 U.S. at 319, standard of viewing "all of the evidence . . . in the light most favorable to the prosecution," the finder of fact was presented with a victim identifying Defendant as the person who robbed her; possession, by Defendant, of bait money with dye stains on it; Defendant's possession of multiple items of clothing that resemble the items worn by the perpetrator during the robbery; and Defendant's ownership of a silver sedan with a sunroof, a vehicle identified as being driven by the robber on video surveillance.

As stated by the supreme court in *Hughes*, this state's appellate courts have frequently found that identification by a single witness is sufficient to establish identity. *See State v. Francis*, 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, *writ denied*, 00-544 (La. 11/13/00), 773 So.2d 156; *State v. Cambrice*, 10-26 (La.App. 5 Cir. 4/26/11), 64 So.3d 363, *writ denied*, 11-1181 (La. 3/23/12), 84 So.3d 568.

We affirm Defendant's conviction, finding that a rational trier of fact, viewing all of the evidence in the light most favorable to the prosecution, could

come to the belief, beyond a reasonable doubt, that Defendant was the individual who committed the armed robbery of the Capital One bank in question on September 17, 2009. Defendant's assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

In her final assignment of error, Defendant claims that she received an excessive sentence. Defendant was sentenced on June 26, 2014. She filed a motion to reconsider sentence on July 7, 2014, which was denied without a hearing on July 11, 2014.

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Louisiana courts have laid out the following guidelines with regard to excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or

that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, p. 5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1006, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Defendant was convicted of armed robbery, which is punishable by imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64(B). Defendant was sentenced to fifteen years at hard labor, without benefit

of probation, parole, or suspension of sentence. This represents a low-end sentence.

At the sentencing hearing, the trial court gave its reasoning as follows:

> All right, Ms. Arceneaux, as you know, I presided over this armed robbery trial and I'm very familiar with the facts. I have considered those facts. I have also considered the information provided me in the pre-sentence investigation report and the fact that you have no prior record. I have considered the aggravating and mitigating circumstances listed in the applicable provisions of [the] Louisiana Code of Criminal Procedure. And after considering all of those facts, I hereby sentence you to serve fifteen years at hard labor. That sentence is to be served without benefit of probation, parole, or suspension of sentence. You will be given credit for time served.

Although Defendant is a forty-nine year old with no prior record, and the mother of a nine-year old son, the fact remains that this was a crime of violence involving the use of a dangerous weapon, which created the possibility of serious injury to not just the victims listed on the bill of information, but also everyone else present in the bank during the robbery.

Louisiana jurisprudence has clearly established that a fifteen-year sentence for armed robbery is not excessive, even for a first offender. In *State v. Lewis*, 08-1308 (La.App. 3 Cir. 4/1/09), 16 So.3d 1, this court found a sentence of thirty years not excessive for a first offender convicted of armed robbery. And in *State v. Augustine*, 555 So.2d 1331 (La.1990), *statutorily superseded on other grounds*, the supreme court held that a forty-year sentence was not excessive for an eighteen-year old first offender convicted of armed robbery.

In light of jurisprudence holding that sentences between thirty and forty years are not excessive for first offenders convicted of armed robbery, we find the trial court did not abuse its discretion by giving Defendant a low-end, fifteen-year sentence for armed robbery without benefit of probation, parole, or suspension of

16

sentence as mandated by the statute. Defendant's third assignment of error lacks merit.

## DISPOSITION

Defendant has failed to meet her burden of proving the use of all of her peremptory strikes as is required under *State v. Hart*, 96-697 (La. 3/7/97), 691 So.2d 651, and therefore, has failed to show any prejudice from the trial court's denial of challenges for cause. The evidence presented at trial sufficiently proved Defendant's identity as the perpetrator of the robbery and the circumstantial evidence corroborated Defendant's guilt. Finally, Defendant's sentence is well below the established allowable range for a first offender convicted of armed robbery. Therefore, both Defendant's conviction and sentence are affirmed.

**AFFIRMED.**